UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

ONEIDA SAVINGS BANK; MARQUIS
COMPANIES I, INC.; PINNACLE HEALTHCARE,
INC.; ROHM SERVICES CORPORATION;
HEATHWOOD HEALTH CARE CENTER, INC.;
and EAGLE HEALTHCARE, INC.,

                    Plaintiffs,

               -against-

UNI-TER UNDERWRITING MANAGEMENT
CORPORATION; UNI-TER CLAIMS SERVICES
CORPORATION; U.S. RE COMPANIES, INC.;
SANFORD ELSASS; DONNA DALTON; JONNA
MILLER; and RICHARD DAVIES,

                  Defendants.

-------------------------------------------------------------- X

ECF Case

No. 5:13-CV-746 (MAD/ATB)

Oral Argument Requested

## DEFENDANTS SANFORD ELSASS AND DONNA DALTON'S
## MEMORANDUM OF LAW IN SUPPORT OF THEIR
## <u>MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM</u>

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000

*Attorneys for Defendants Sanford Elsass
and Donna Dalton*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 3

ARGUMENT ....................................................................................................... 8

I.    THE PLAINTIFFS FAIL TO ALLEGE A MISSTATEMENT. ...................................... 9

    A.    The Plaintiffs Fail to Identify Any Alleged Misstatements with Particularity ................................................................................................ 9

    B.    The Plaintiffs Fail to Explain Why Any Alleged Misstatement Was False ........ 11

II.    THE FRAUD CLAIMS FAIL TO ALLEGE FACTS SUPPORTING A STRONG INFERENCE OF SCIENTER. ...................................................................... 13

    A.    The Plaintiffs Fail to Identify Concrete Benefits to Mr. Elsass or Ms. Dalton from the Alleged Misstatements ................................................ 14

    B.    The Plaintiffs Fail to Plead that Mr. Elsass or Ms. Dalton Knew Contradictory Facts ................................................................................ 15

    C.    Uni-Ter's Investments in Lewis & Clark Defeat Any Inference of Scienter ...... 18

    D.    The Complaint Supports a Compelling Non-Fraudulent Inference .................... 18

III.    THE PLAINTIFFS FAIL TO ALLEGE A TORT DIRECTED AT THE PUBLIC-AT-LARGE SUPPORTING A PUNITIVE DAMAGES CLAIM ................................ 20

CONCLUSION ................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re Acterna Corp. Sec. Litig.*,
   378 F. Supp. 2d 561 (D. Md. 2005) ......................................................................19

*In re Ambac Fin. Grp., Inc. Sec. Litig.*,
   693 F. Supp. 2d 241 (S.D.N.Y. 2010) ...................................................................15

*Atl. Gypsum Co. v. Lloyds Int'l Corp.*,
   753 F. Supp. 505 (S.D.N.Y. 1990) ........................................................................18

*In re Bristol-Myers Squibb Sec. Lit.*,
   312 F. Supp. 2d 549 (S.D.N.Y. 2004) ...................................................................11

*CAC Group, Inc. v. Maxim Group, LLC*,
   No. 12 Civ. 5901, 2012 WL 4857518 (S.D.N.Y. Oct. 10, 2012) ...........................9

*Chill v. Gen. Elec. Co.*,
   101 F.3d 263 (2d Cir. 1996) ..................................................................................15

*City of Brockton Ret. Sys. v. Shaw Grp., Inc.*,
   540 F. Supp. 2d 464 (S.D.N.Y. 2008) ...................................................................17

*Cross v. Toyota Motor Corp.*,
   No. 10 Civ. 1179, 2011 WL 2222350 (N.D.N.Y. June 7, 2011) ......................9, 20

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) ..................................................................................13

*Fort Worth Employers' Ret. Fund v. Biovail Corp.*,
   615 F. Supp. 2d 218 (S.D.N.Y. 2009) ...................................................................14

*Fulton Cnty. Employees Ret. Sys. v. MGIC Inv. Corp.*,
   675 F.3d 1047 (7th Cir. 2012) ...............................................................................11

*Fulton v. Allstate Ins. Co.*,
   14 A.D.3d 380 (1st Dep't 2005) ............................................................................20

*Gander Mountain Co. v. Islip U-Slip LLC*,
   923 F. Supp. 2d 351 (N.D.N.Y. 2013) .....................................................................5

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011) ...................................................................12

*Harborview Value Masterfund, L.P. v. Freeline Sports, Inc.*,
  No. 11 Civ. 1638, 2012 WL 612358 (S.D.N.Y. Feb. 23, 2012) .......................................13, 14

*Hart v. Internet Wire, Inc.*,
  145 F. Supp. 2d 360 (S.D.N.Y. 2001) ........................................................................................16

*Ho v. Duoyuan Global Water, Inc.*,
  887 F. Supp. 2d 547 (S.D.N.Y. 2012) ........................................................................................11

*Hydro Investors, Inc. v. Trafalgar Power, Inc.*,
  227 F.3d 8 (2d Cir. 2000) .............................................................................................................9

*Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*,
  No. 08 Civ. 797, 2010 WL 1287058 (E.D. Wis. Mar. 30, 2010).................................................19

*Janbay v. Canadian Solar, Inc.*,
  No. 10 Civ. 4430, 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ...............................................17

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327 (S.D.N.Y. 2000)...........................................................................................18

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001).........................................................................................14, 15, 16

*Kuriakose v. Federal Home Loan Mortg. Corp.*,
  897 F. Supp. 2d 168 (S.D.N.Y. 2012) ........................................................................................15

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
  No. 11-4443, 2012 WL 1352590 (2d Cir. Apr. 19, 2012) ...........................................................16

*Local No. 38 Int'l Bd. of Elec. Workers Pension Fund v. Am. Exp. Co.*,
  724 F. Supp. 2d 447 (S.D.N.Y. 2010).........................................................................................8

*Pilarczyk v. Morrison Knudsen Corp.*,
  965 F. Supp. 311 (N.D.N.Y. 1997)..............................................................................................8

*Pollio v. MF Global, Ltd.*,
  608 F. Supp. 2d 564 (S.D.N.Y. 2009) ........................................................................................11

*Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*,
  898 F. Supp. 2d 673 (S.D.N.Y. 2012) ........................................................................................12

*In re PXRE Grp., Ltd. Sec. Litig.*,
  600 F. Supp. 2d 510 (S.D.N.Y. 2009).......................................................................................15, 16

*In re Refco, Inc. Sec. Litig.*,
  826 F. Supp. 2d 478 (S.D.N.Y. 2011).........................................................................................9

*Rombach v. Chang,*
  355 F.3d 164 (2d Cir. 2004)...........................................................................9, 11

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.,*
  75 F.3d 801 (2d Cir. 1996)....................................................................................12

*Sheppard v. Manhattan Club Timeshare Ass'n,*
  No. 11 Civ. 4362, 2012 WL 1890388 (S.D.N.Y. May 23, 2012).........................10

*Sinay v. CNOOC Ltd.,*
  No. 12 Civ. 1513, 2013 WL 1890291 (S.D.N.Y. May 6, 2013)............................16

*Slayton v. Am. Exp. Co.,*
  604 F.3d 758 (2d Cir. 2010)..................................................................................19

*Steinhardt Grp., Inc. v. Citicorp,*
  272 A.D.2d 255 (1st Dep't 2000) .........................................................................20

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,*
  531 F.3d 190 (2d Cir. 2008)..................................................................................15

*Tyler v. Liz Claiborne, Inc.,*
  814 F. Supp. 2d 323 (S.D.N.Y. 2011)..............................................................16, 17

*In re UBS AG Sec. Litig.,*
  No. 07 Civ. 11225, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)......................10

*U.S. Bank Nat'l. Ass'n v. Bank of Am., N.A.,*
  No. 12 Civ. 4873, 2012 WL 6136017 (S.D.N.Y. Dec. 11, 2012).........................13

*Warchol v. Green Mountain Coffee Roasters, Inc.,*
  No. 10 Civ. 227, 2012 WL 256099 (D. Vt. Jan. 27, 2012)..............................13, 14

*Watson v. Consol. Edison of N.Y.,*
  594 F. Supp. 2d 399 (S.D.N.Y. 2009)...................................................................10

## STATUTES & RULES

Fed. R. of Civ. P. 9(b).................................................................................... passim

Fed. R. Civ. P. 12(b)(6)...........................................................................................1

Defendants Sanford Elsass and Donna Dalton respectfully submit this memorandum of law in support of their motion to dismiss the complaint in this action for failure to state a claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act.[1]

## INTRODUCTION

After years of running a successful insurance company together, the plaintiffs and the defendants, including Mr. Elsass and Ms. Dalton, expanded their business into a new market. In hindsight, that good faith decision proved to be a mistake.  The business failed; the plaintiffs and Uni-Ter lost their investments; and the defendants lost a valuable management contract. Now the plaintiffs seek to recover the losses from their knowing decision to invest additional capital in a struggling business by claiming they were defrauded.  But the facts alleged in the complaint do not support plaintiffs' claims.

Beginning in 2004, the plaintiffs and Uni-Ter—of which Mr. Elsass and Ms. Dalton were officers—operated Lewis & Clark, a successful insurer of small healthcare facility operators.  Uni-Ter (and Mr. Elsass and Ms. Dalton) ran Lewis & Clark's day-to-day operations while the plaintiffs provided capital and governed the business through their representatives on its board of directors.  In July 2009, Lewis & Clark began insuring larger healthcare facility operators than it had previously.  By 2011, these facilities were passing substantial losses on to Lewis & Clark.  Plaintiffs' complaint focuses on the two-month period from September 2011 through November 2011, during which these unexpected losses came to light, the defendants disclosed them to the plaintiffs, hired outside consultants to review the business, shared the

---

[1] Mr. Elsass and Ms. Dalton also join in the memorandum being filed today by defendants Uni-Ter Underwriting Management Corporation, Uni-Ter Claims Services Corporation, U.S. Re Companies, Inc., Jonna Miller, and Richard Davies.

results of that review with the plaintiffs, sought and received additional investments from the plaintiffs to shore up the company's capital position, invested significant sums of their own in the struggling business, and continued to review and investigate the losses.  The plaintiffs theorize that because Lewis & Clark's business continued to deteriorate after they made their investments and because the defendants' subsequent reviews and investigations revealed additional problems at the company, the defendants *must have* defrauded them into making their investments.  This theory fails to state a claim for several independent reasons.

First, the complaint does not meet Rule 9(b)'s requirement to identify any misstatement with particularity.  The plaintiffs' vague allegations that "Uni-Ter" or the "defendants" "led them to believe" certain things about Lewis & Clark's financial state will not suffice.  The plaintiffs fail to allege the "who, what, where, and when" of the alleged fraud, as they must to state their claims.  *See infra* pp. 9-11.

Second, the complaint likewise fails to meet Rule 9(b)'s requirement to explain with specificity why any alleged misstatement was false when made.  In attempting to plead falsity, the plaintiffs simply allege that statements made in September 2011 *must have* been false, because they were ultimately contradicted by information that emerged months later in late November and December.  Such allegations of fraud by hindsight do not state a fraud claim.  *See infra* pp. 11-13.

Third, the complaint does not allege facts supporting the required cogent and compelling inference of scienter.  The plaintiffs do not plead scienter based on motive and opportunity because they fail to identify any concrete benefits that Mr. Elsass or Ms. Dalton received from any supposed fraud.  And they do not plead scienter based on recklessness, because they do not allege that Mr. Elsass or Ms. Dalton had access to specific information

2

contradicting their statements at the time they were made.  Moreover, Uni-Ter's own

investments in Lewis & Clark at the same time as the plaintiffs' investments rebuts any inference

of scienter.  As a result, any inference of fraud arising from plaintiffs' allegations is not nearly as

cogent and compelling as the opposing non-fraudulent inference—that the defendants' good faith

efforts to save Lewis & Clark's business were derailed by unexpected events.  *See infra* pp. 13-

19.

       Finally, the plaintiffs' claim for punitive damages against Mr. Elsass and Ms.

Dalton must be dismissed because the complaint fails to allege any tort directed at the public-at-

large, as it must to recover punitive damages under New York law.  *See infra* p. 20.

       For these reasons, Sanford Elsass and Donna Dalton respectfully request that the

plaintiffs' claims against them be dismissed with prejudice.

## BACKGROUND

       This case arises from the plaintiffs' investment in Lewis & Clark LTC Risk

Retention Group, Inc. ("Lewis & Clark"), an insurer of long-term-care facilities operating as a

"risk retention group."[2]  Defendant Uni-Ter Underwriting Management Corporation ("Uni-

Ter")[3] managed Lewis and Clark's operations under a management agreement, including

managing claims and placing larger risks with reinsurers.  (*Id.* ¶¶ 27-28.)  Mr. Elsass was Uni-

Ter's president and chief executive officer.  (*Id.* ¶ 16.)  Ms. Dalton was its chief financial officer

and chief operating officer.  (*Id.* ¶ 17.)  Defendant Jonna Miller was Uni-Ter's vice president for

claims.  (*Id.* ¶ 18.)  Plaintiff Oneida Savings Bank is a sophisticated and experienced participant

in the health care insurance business, including through its affiliate Bailey & Haskell Associates,

---

[2] In a risk retention group, policyholders form a group to provide liability coverage.  (Compl. ¶ 26.)  The group then
retains liability for small claims and reinsures large losses.  (*Id.*)  The policyholders own the group's equity.  (*Id.*)
[3] Uni-Ter was a wholly-owned subsidiary of defendant U.S. Re Companies, Inc. ("U.S. Re"), a closely-held
reinsurance company.  (*Id.* ¶ 33.)  Defendant Richard Davies was U.S. Re's chief financial officer.  (*Id.* ¶ 19.)

Inc., an insurance agency "with a significant presence in the health care sector." (*Id.* ¶ 35.) The remaining plaintiffs are healthcare companies that invested in Lewis & Clark. (*Id.* ¶¶ 8-12.)

     <u>Lewis & Clark's Operations.</u>  In 2004, Oneida Savings Bank and Uni-Ter formed Lewis & Clark's predecessor firm. (Compl. ¶¶ 36-37.) Oneida and the other plaintiffs each contributed capital to Lewis & Clark and appointed a representative to Lewis & Clark's board of directors. (*Id.* ¶¶ 36, 44.) Oneida then invested additional capital in Lewis & Clark in 2005. (*Id.* ¶¶ 41-42.) Under the parties' joint control, Lewis & Clark operated "successfully and profitably" until 2010. (*Id.* ¶ 47.)

     Beginning in July 2009, Lewis & Clark, with the plaintiffs' knowledge, "diverg[ed] from its established business model," attempting to grow its profitable business by taking on larger policyholders than it had previously. (Compl. ¶ 48.) In particular, Lewis & Clark accepted as new policyholders two large, multi-site long-term-care operators, including one operating approximately fifty long-term care facilities. (*Id.*) These were the first large, multi-facility operators Lewis & Clark had insured. (*Id.*) While plaintiffs allege that Lewis & Clark accepted these policyholders "at Uni-Ter's direction," they do not allege (because they cannot) that Uni-Ter concealed this decision from them. (*Id.*) During the policy years from July 2009 to July 2011, these facilities submitted significant claims to Lewis & Clark. (*Id.* ¶ 51.) As a result, Lewis & Clark did not renew the facilities' coverage after July 2011. (*Id.* ¶ 52.) But the damage was done—after operating profitably from 2007 through 2010, Lewis & Clark had a losing year in 2011. (*Id.* ¶ 51.)

     <u>The September 1, 2011 Memo and the September Praxis Review.</u>  After learning of these unexpected losses, Mr. Elsass and Ms. Dalton sent a memorandum to Lewis & Clark's

board (including plaintiffs) on September 1, 2011 disclosing the losses and explaining Uni-Ter's proposed responses.  (*Id.* ¶ 57.)

Among other things, Mr. Elsass and Ms. Dalton explained that Uni-Ter planned to hire a consultant to review its claims process and that the consultant's report should be available in time for an upcoming board meeting on September 21, 2011.  (*Id.*)  Uni-Ter hired Brian Stiefel of Praxis Claims Consulting to conduct the review.  (*Id.* ¶ 61.)  Mr. Stiefel reported his findings in a memo dated September 15, 2011 to Tal Piccione, U.S. Re's chief executive officer, Mr. Elsass, and Mr. Davies (the "September 15 Praxis Report").  (*Id.* ¶ 61; *see also* Ex. A.)[4]

The September 15 Praxis Report explained in detail how Praxis conducted its review.  It explained that Praxis began by reviewing excerpts from a limited number of "specific claim file documents [Uni-Ter] supplied."  (Ex. A at 1).  Praxis then visited Uni-Ter's offices for two days to meet with Ms. Miller and other members of Uni-Ter's claims staff.  (*Id.*)  During its visit, Praxis only reviewed open claims that had either been discussed in its meetings with the claims staff or "identified as cases that would illustrate the current reserving methodology."  (*Id.*)

As the Report clearly explained, Praxis based its review on "the pre-visit review [of the excerpts from claims files Uni-Ter supplied], as well as the on-site meetings, discussions, observations, and *limited file reviews* conducted in this two-day period."  (*Id.* at 2 (emphasis

---

[4] References to "Ex. __" refer to exhibits to the accompanying Declaration of James J. Beha II dated September 30, 2013 (the "Beha Declaration").  The documents attached as exhibits to the Beha Declaration are all incorporated by reference in, and integral to, the complaint.  For purposes of this motion to dismiss, "the Court may consider: '(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.'"  *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 358 (N.D.N.Y. 2013) (D'Agostino, J.) (quoting *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt*, No. 08 Civ. 4207, 2012 WL 1038804 at *4 (E.D.N.Y. Mar. 28, 2012)).

added).)  Specifically, the Praxis report based its review of Uni-Ter's claims methodology on a sample of nine claims files.  (Compl. ¶ 62.)

Praxis also stated that "[a]lthough [it] felt that the observations and recommendations contained in th[e] report accurately reflect the claims handling by Uni-Ter, *a larger statistical sampling of claim files to be reviewed may be done to confirm Praxis' findings*."  (Ex. A at 2 (emphasis added).)

Uni-Ter shared the September 15 Praxis Report with its directors—including plaintiffs' representatives—before the upcoming Lewis & Clark board meeting on September 21, 2011.  (Compl. ¶ 61.)

The Board Meetings and Plaintiffs' Investments.  As alleged in the complaint, the plaintiffs' representatives, Mr. Elsass, Ms. Dalton, Ms. Miller, and Mr. Davies all attended Lewis & Clark's board meeting on September 21, 2011.  (Compl. ¶¶ 53, 58-60, 63.)  At the meeting, Mr. Stiefel presented Praxis's report to the board.  (*Id.* ¶ 61.)  And Uni-Ter reported "the significantly increased claims reserves."  (*Id.* ¶ 53.)  According to the complaint, a board member asked Ms. Miller if there were any other claims developments that had not been previously reported.  (*Id.* ¶ 64.)  She said there were not; Mr. Elsass "agreed;" and Ms. Dalton "remained silent."  (*Id.*)

At the meeting, Uni-Ter "requested . . . that the Plaintiffs . . . make additional investments in Lewis & Clark."  (Compl. ¶ 56.)  Uni-Ter explained that Lewis & Clark needed this additional investment "to preserve [its] good standing with the Nevada Department of Insurance, an acceptable premium-to-equity ratio, and its [financial stability] rating."  (*Id.*)

On November 7, 2011, Uni-Ter's board met again by telephone to discuss the plaintiffs' potential additional investment.  (Compl. ¶¶ 65-66.)  According to the complaint, at

6

the meeting, Uni-Ter "reassured the Plaintiffs that the capital infusion . . . would satisfy Lewis &
Clark's capital needs and that the claims reserves were adequate." (*Id.* ¶ 65.)  And, according to
the complaint, after that meeting, the plaintiffs made their investments by purchasing $2.2
million of debentures convertible into equity interests in Lewis & Clark.  (*Id.* ¶ 66-68.)  When
the plaintiffs purchased these debentures, Uni-Ter joined them, investing $300,000 of its own in
Lewis & Clark.  (*See* Ex. B.)

    <u>The Defendants' Continued Efforts to Save Lewis & Clark.</u>  Later in November,
after the plaintiffs made their investments, Uni-Ter sought additional investments from its
policyholders in an equity offering subject to an offering memorandum.  (Compl. ¶ 82.)  The
offering memorandum disclosed that Lewis & Clark had suffered "significant underwriting
losses in 2011."  (*Id.* ¶ 84.)  It also disclosed that Lewis & Clark had recently solicited and
received additional capital from the plaintiffs.  (*Id.*)  And it stated that Lewis & Clark "expected
that the net proceeds generated from [the offering] will provide additional funds for the
Company to continue operations and to comply with all applicable capitalization requirements
under Nevada law."  (*Id.* ¶ 85.)

    In late November 2011, Uni-Ter conducted an additional internal review of all of
Lewis & Clark's claims reserves.  (Compl. ¶ 71.)  In December, following that internal review,
U.S. Re directed Uni-Ter to retain Praxis to conduct a full claims review.  (*Id.* ¶ 73.)  In this later
review, Praxis determined that claims reserves should be increased by $5 million, significantly
increasing Lewis & Clark's net loss for fiscal year 2011 and decreasing Lewis & Clark's capital
position to "an unacceptable level for operational, regulatory, and rating purposes."  (*Id.* ¶¶ 74-
75.)  Praxis completed the review on Friday, December 16, 2011 and Uni-Ter shared the results
with the board on the following Tuesday, December 20.  (*Id.* ¶¶ 73, 92.)

Over the next several months, Uni-Ter and U.S. Re attempted to address these negative developments by, among other things, hiring additional outside experts, seeking a capital contribution from Lewis & Clark's reinsurer, and discussing a possible recapitalization with Lewis & Clark's regulators.  (Compl. ¶ 94.)  Uni-Ter also invested an additional $200,000 in Lewis & Clark in February 2012.  (Ex. C.)  Ultimately, all of these efforts failed and Lewis & Clark entered dissolution on November 11, 2012.  (Compl. ¶ 96.)

*            *            *

On June 25, 2013, the plaintiffs filed their complaint in this action, asserting, among others, claims against Mr. Elsass and Ms. Dalton for violating Securities Exchange Act Section 10(b) and S.E.C. Rule 10b-5, common law fraud, fraudulent inducement, and negligent misrepresentation.

## ARGUMENT

To sustain their fraud-based claims, the plaintiffs "must allege that the defendant[s] (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which plaintiff[s] relied, and (5) that the plaintiff[s'] reliance was the proximate cause of [their] injury."[5]  *Local No. 38 Int'l Bd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 458 (S.D.N.Y. 2010) (quoting *ATSI Commc'ns v. The SHAAR Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007)).  And to sustain their negligent misrepresentation claim, the plaintiffs must allege that: "(1) the defendant[s] had a duty, as a result of a special relationship, to give correct information; (2) the defendant[s] made a false representation that [they] should have known was incorrect; (3) the information supplied in the representation was known by the defendant[s] to be desired by the

---

[5] "The elements of fraud under New York law and Section 10(b) are essentially the same."  *Pilarczyk v. Morrison Knudsen Corp.*, 965 F. Supp. 311, 322 (N.D.N.Y. 1997) *aff'd*, 162 F.3d 1148 (2d Cir. 1998) (*citing Fruchtman v. First Edition Composite Holdings Inc.*, No. 89 Civ. 7058, 1991 WL 238273, at *4 (S.D.N.Y. Nov. 6, 1991)).

8

plaintiff[s] for a serious purpose; (4) the plaintiff[s] intended to rely and act upon it; and (5) the plaintiff[s] reasonably relied on it to [their] detriment." *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).  Finally, to recover punitive damages from Mr. Elsass and Ms. Dalton, the plaintiffs must allege that Mr. Elsass and Ms. Dalton committed an "egregious tort directed at the public at large."  *Cross v. Toyota Motor Corp.*, No. 10 Civ. 1179, 2011 WL 2222350, at \*2 (N.D.N.Y. June 7, 2011) (quoting *Steinhardt*, 272 A.D.2d at 257).

The plaintiffs' claims against Mr. Elsass and Ms. Dalton fail to identify any misstatement with adequate particularity or to properly explain why any such statements were false when made.  The plaintiffs' fraud claims also fail to allege facts giving rise to a cogent and compelling inference that Mr. Elsass or Ms. Dalton intentionally deceived them.  Finally, the plaintiffs fail to allege any conduct directed to the public-at-large.  As a result, the complaint fails to state a claim against either Mr. Elsass or Ms. Dalton and must be dismissed.

## I.      THE PLAINTIFFS FAIL TO ALLEGE A MISSTATEMENT.

### A.      The Plaintiffs Fail to Identify Any Alleged Misstatements with Particularity

To satisfy Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quotation marks omitted).   In short, Rule 9(b) requires the plaintiffs to allege the "who, what, where, [and] when" of the alleged misstatements.[6]  *In re Refco, Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 527 (S.D.N.Y. 2011).

---

[6] Because the complaint sounds in fraud, Rule 9(b) governs plaintiffs' negligent misrepresentation claim as well as their fraud claims.  *See CAC Group, Inc. v. Maxim Group, LLC*, No. 12 Civ. 5901, 2012 WL 4857518, at \*5 (S.D.N.Y. Oct. 10, 2012), *aff'd*, No. 12-4381-cv, 2013 WL 1831672 (2d Cir. May 2, 2013) ("[f]ederal courts considering claims for negligent misrepresentation under . . . New York . . . law[ ] require such claims be pled with particularity under Rule 9(b)" (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 583 (2d Cir. 2005)).

Rather than identify *who* made the alleged misstatement, however, the complaint repeatedly and generally refers to alleged misstatements made by "Uni-Ter" or the "defendants." (*See, e.g.,* Compl. ¶¶ 101-07, 112-17, 119-25, 127-32, 134-38, 141-47, 149.)  But "the individual defendants . . . must have *actually "made" the statements* . . . to be held liable under Section 10(b)." *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225, 2012 WL 4471265, at *10 (S.D.N.Y. Sept. 28, 2012) (emphasis added) (dismissing securities fraud claims against individual defendants for failure to plead that they actually made any misstatement).  Accordingly, "circumstances amounting to fraud [must] be pleaded *as to each individual defendant*, and not premised on guilt by association." *Sheppard v. Manhattan Club Timeshare Ass'n*, No. 11 Civ. 4362, 2012 WL 1890388, at *5 (S.D.N.Y. May 23, 2012) (emphasis added).  Plaintiffs' generic references to statements made by "Uni-Ter" or the "defendants" do not meet this burden and cannot support plaintiffs' claim against Mr. Elsass or Ms. Dalton.

And rather than identify *what* was actually said, the plaintiffs make vague allegations that the defendants "represented" certain facts to them and "informed," "assur[ed]," "reassured," "g[a]ve [them] comfort" about, or "led them to believe" others.  (*See, e.g.,* Compl. ¶¶ 53, 55, 65, 66, 76.)  But Rule 9(b) requires the plaintiffs to allege "*what was said* . . . as opposed to the mere gist." *Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 409 (S.D.N.Y. 2009) (*quoting Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273, 275–76 (2d Cir. 1998)).

Similarly, the plaintiffs allege that at the board meeting on September 21, Mr. Elsass "agreed" and Ms. Dalton "remained silent" when Ms. Miller allegedly said there were no claims developments not previously reported.  (Compl. ¶ 64.)  Plaintiffs do not allege that Ms. Miller's statement was false or that Mr. Elsass or Ms. Dalton knew it was false.  But even if they

10

had alleged a misstatement *by Ms. Miller*, the plaintiffs fail to allege what, if anything, Mr.

Elsass actually *said* to express this supposed agreement.  Vague allegations about Mr. Elsass's

supposed agreement are not sufficient to state a fraud claim.  And the allegation of Ms. Dalton's

silence fails, as well, because—again even if plaintiffs had properly alleged a misstatement by

Ms. Miller—Ms. Dalton had no duty to correct Ms. Miller's supposed misstatement.  The law is

clear that "[a] party has no duty to correct statements not attributable to it."  *In re Bristol-Myers*

*Squibb Sec. Lit.*, 312 F. Supp. 2d 549, 560 (S.D.N.Y. 2004); *see also Ho v. Duoyuan Global*

*Water, Inc.*, 887 F. Supp. 2d 547, 572 n.13 (S.D.N.Y. 2012) (no duty to correct another's

misstatement because "each party is only liable for their own omissions as well"); *Fulton Cnty.*

*Employees Ret. Sys. v. MGIC Inv. Corp.*,  675 F.3d 1047, 1051-52 (7th Cir. 2012) (dismissing

securities fraud claim based on alleged failure to correct and noting that "no statute or rule

creates such a duty [to correct another's misstatement]").

    **B.**    **The Plaintiffs Fail to Explain Why Any Alleged Misstatement Was False**

        Rule 9(b) also requires the plaintiffs to "state with particularity 'in what respects

the statements at issue were false.'"  *Pollio v. MF Global, Ltd.*, 608 F. Supp. 2d 564, 570

(S.D.N.Y. 2009) (quoting *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip*

*Morris Cos.*, 75 F.3d 801, 812 (2d Cir. 1996)).  To meet this burden, plaintiffs "must do more

than say that the statements . . . were false and misleading; they must demonstrate with

specificity why and how that is so." *Rombach*, 355 F.3d at 174.  They fail to do so.

        First, according to the plaintiffs, Uni-Ter "led [the board] to believe" that Praxis's

September 15 Report "represented a complete review of the claims process" and "a full review

of the amounts reserved for each claim."  (Compl. ¶¶ 76-77.)  But no defendant ever said that.

And the plaintiffs do not allege that they did.  In fact, the plaintiffs acknowledge that they

received the same September 15 report the defendants received.  (*Id.* ¶ 61.)  That report

described every step of Praxis's review in detail and expressly disclosed that Praxis based its findings on "limited file reviews" of files "identified [to] illustrate" the claims process. (Ex. A at 1-2.) After being fully informed of the precise details and limitations of Praxis's review, the plaintiffs cannot plausibly claim to have been misled about its scope.

Second, the plaintiffs suggest either that the defendants failed to disclose the results of Uni-Ter's late-November and December reviews or that those reviews render the defendants' earlier statements misleading. (Compl. ¶¶ 71, 73.) But those reviews occurred in late November and December, *after* any alleged misstatement. Logic dictates that information learned in December cannot support an allegation that statements made the previous September were knowingly false. *See Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 690 (S.D.N.Y. 2012) ("[p]laintiffs simply cannot rely on the figures announced for December to support their allegations that the statements made three months earlier were false").

The plaintiffs attempt to avoid this reality by baldly asserting that the defendants "knew" (and failed to disclose) in September that Praxis "was going to" conduct a subsequent review in December.[7] (Compl. ¶ 72.)  But the plaintiffs fail to allege any actual *facts* supporting their theory that the defendants knew in September about actions they did not take until months later. Rather, plaintiffs simply "purport to read [the defendants'] mind[s]." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 595 (S.D.N.Y. 2011). The plaintiffs cannot plead falsity with a conclusory allegation that the defendants "knew" in September 2011 that they would take certain steps two months later. *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,

---

[7] Notably, plaintiffs fail to make even this inadequate allegation with respect to Ms. Dalton. (*See* Compl. ¶ 72 ("U.S. Re, Uni-Ter, Mr. Elsass, Ms. Miller, and Mr. Davies before the September 21, 2011 meeting knew that Praxis was going to be evaluating the amount of Lewis & Clark's loss reserves because it was likely that the reserves needed to be materially larger.").)

ny-1109869

75 F.3d 801, 812 (2d Cir. 1996) ("Plaintiffs allege no circumstances to support their allegation that the allegedly false statements, made at least three weeks before the [sales] figure was announced, were false at the time made.").

Moreover, the plaintiffs' actual factual allegations elsewhere in the complaint directly contradict this theory.  According to the complaint, "U.S. Re required Uni-Ter to retain Praxis *in December 2011* . . . based on the significantly adverse findings of the internal review" conducted "in *late November 2011*."  (Compl. ¶¶ 71, 73 (emphasis added).)  Thus, according to the plaintiffs' own complaint, Uni-Ter did not decide to engage Praxis for an additional review until *after* it completed its own internal review in late November.  As a result, the Court should disregard plaintiffs' contradictory allegation that the defendants "knew" in September they would engage Praxis for the December review.  This Court "is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *U.S. Bank Nat'l. Ass'n v. Bank of Am., N.A.*, No. 12 Civ. 4873, 2012 WL 6136017, at *7 (S.D.N.Y. Dec. 11, 2012).

## II.   THE FRAUD CLAIMS FAIL TO ALLEGE FACTS SUPPORTING A STRONG INFERENCE OF SCIENTER.

Under the Reform Act, a plaintiff must allege scienter with specific facts that "give rise to a strong inference" of fraudulent intent.  *Harborview Value Masterfund, L.P. v. Freeline Sports, Inc.*, No. 11 Civ. 1638, 2012 WL 612358, at *9 (S.D.N.Y. Feb. 23, 2012).  A "strong inference" of scienter "must be 'more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'"  *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)).  Moreover, "plaintiffs must allege scienter adequately as *to each individual defendant*."  *Warchol*

13

*v. Green Mountain Coffee Roasters, Inc.*, No. 10 Civ. 227, 2012 WL 256099, at *7 (D. Vt. Jan. 27, 2012) (citing *Teamsters Allied Benefit Funds v. McGraw*, No. 09 Civ. 140, 2010 WL 882883, at *11 n. 6 (S.D.N.Y. Mar. 11, 2010)).

To meet this burden under Second Circuit law, a plaintiff may allege either "'(a) facts showing that defendants had both motive and opportunity to commit fraud, or (b) facts constituting strong circumstantial evidence of conscious misbehavior or recklessness.'" *Harborview Value Masterfund*, 2012 WL 612358, at *8-9 (citation omitted).  But "regardless of the manner in which a plaintiff attempts to plead scienter, at the end of its evaluation, the Court must be convinced that the inference of scienter is 'at least as compelling' as any competing inferences."  *Fort Worth Employers' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 225 (S.D.N.Y. 2009) (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 197 (2d Cir. 2008).  The complaint falls far short of this threshold.

### A.   The Plaintiffs Fail to Identify Concrete Benefits to Mr. Elsass or Ms. Dalton from the Alleged Misstatements

The plaintiffs may allege scienter based on "sufficient motive allegations 'entail[ing] concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged."  *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) (quoting *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)).  But "[m]otives . . . generally possessed by most corporate directors and officers do not suffice" to plead securities fraud.  *Kalnit*, 264 F.3d at 139.

Plaintiffs fail to identify any "concrete benefits" Mr. Elsass or Ms. Dalton realized by any alleged misstatement.  Indeed, they do not even purport to identify a specific motivation for *Mr. Elsass or Ms. Dalton* as individuals to commit fraud.  Rather, the plaintiffs ascribe various motives to "Uni-Ter" or "U.S. Re."  (*See* Compl. ¶¶ 79-81, 88.)  These allegations fail to

14

plead facts establishing that any *individual* had a motive to commit fraud.  *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).

In addition, the motives plaintiffs describe are "generally possessed by most corporate officers and directors" and do not allege the sorts of "concrete benefits" required to plead scienter.  *Kalnit*, 264 F.3d at 139.  Specifically, plaintiffs allege that defendants were motivated to commit fraud by a desire to (a) delay Lewis & Clark's insolvency (Compl. ¶¶ 79, 88); (b) protect their business reputations (*id.* ¶ 80); (c) "capture additional business" or "expand its market share" (*id.* ¶¶ 81, 88); and (d) "continue receiving management fees" (*id.* ¶ 81).  But there is nothing unusual or nefarious about a desire to protect one's reputation and build a successful business.  Courts consistently reject allegations that defendants were "'uniquely motivated' to commit fraud because they wanted . . . to remain solvent and preserve their reputations."  *Kuriakose v. Federal Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 184 (S.D.N.Y. 2012).  As the *Kuriakose* court explained, "[f]ar from 'unique,' these motivations are ubiquitous in business."  *Id.*  As a result, such allegations are "too generalized to allege the proper 'concrete and personal' benefit required by the Second Circuit" to allege scienter.  *In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 532 (S.D.N.Y. 2009); *see also In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 266 (S.D.N.Y. 2010) ("desire to increase company profits, keep their jobs, and increase compensation, are classic examples of motives that fail under the Second Circuit analysis as too general"); *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (motive to "maintain the appearance of corporate profitability" insufficient).

### B.     The Plaintiffs Fail to Plead that Mr. Elsass or Ms. Dalton Knew Contradictory Facts

Plaintiffs may also plead scienter "based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their

15

public statements." *Kalnit*, 264 F.3d at 142 (quoting *Novak*, 216 F.3d at 308.)  But because the plaintiffs here failed to allege motive, they must allege a heightened degree of recklessness "approaching a knowledgeable participation in the fraud or a deliberate and conscious disregard of facts" and "must detail *specific contemporaneous data or information* known to the defendants that was inconsistent with the representation in question."  *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 367, 368 (S.D.N.Y. 2001) (quotation marks and citation omitted) (emphasis added).

   The plaintiffs suggest with hindsight that Mr. Elsass and Ms. Dalton knew their statements in September were false at the time because they were later contradicted by subsequent claims reviews conducted in late November and December.  (Compl. ¶¶ 72-75.)  To plead recklessness, however, plaintiffs must allege that defendants "had knowledge of *specific* contradictory information . . . *at the same time* that Defendants made the challenged statements." *In re PXRE*, 600 F. Supp. 2d at 536 (emphasis in original); *see also Sinay v. CNOOC Ltd.*, No. 12 Civ. 1513, 2013 WL 1890291, at *8 (S.D.N.Y. May 6, 2013) (dismissing complaint because "there is not a single allegation in the complaint specifically identifying any information known to [the defendant] *at the time [it] made any of its allegedly false statements* undermining the accuracy of those statements in any way" (emphasis added)); *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 336 (S.D.N.Y. 2011)  (plaintiffs must specifically identify contradictory information "available to the defendants . . . *at the same time* they made their misleading statements" (citation omitted) (emphasis in original)); *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, No. 11-4443, 2012 WL 1352590, at *2 (2d Cir. Apr. 19, 2012) (allegations that defendants "had access to information that was inconsistent with their alleged misstatements must specifically identify the reports or statements containing this information."

(quotation marks omitted)).  Here, plaintiffs fail to identify any information that Mr. Elsass or Ms. Dalton had access to at the time of the alleged misstatements.

Plaintiffs also assert that the offering memorandum Uni-Ter issued in November 2011 "show[s] that Uni-Ter was acting with *scienter* when it induced Plaintiffs to invest in Lewis & Clark."  (Compl. ¶ 87 (emphasis in original).)  There are several things wrong with this theory.  First, plaintiffs run into the same timing problem:  The plaintiffs explicitly allege that this offering occurred "after the Plaintiffs executed the November 2011 debentures."  (*Id.* ¶ 82.)  The contents of an offering memorandum issued after the plaintiffs' investments say nothing about the defendants' knowledge at the time of any alleged misstatements to the plaintiffs.  Second, the plaintiffs do not allege that Mr. Elsass or Ms. Dalton prepared or reviewed the memorandum or otherwise tie the memorandum to Mr. Elsass or Ms. Dalton in any way.  As a result, this memorandum says nothing about their state of mind.  *See Janbay v. Canadian Solar, Inc.*, No. 10 Civ. 4430, 2012 WL 1080306, at *11 (S.D.N.Y. Mar. 30, 2012) (dismissing claims against individual defendants where complaint "ties none of the scienter allegations to any Individual Defendant"); *City of Brockton Ret. Sys. v. Shaw Grp., Inc.*, 540 F. Supp. 2d 464, 472-74 (S.D.N.Y. 2008) (no inference of scienter where plaintiffs "do not plead that these individuals had access to particular, identified internal reports that would have alerted them to" the alleged fraud).  Finally, on a more basic level, the plaintiffs do not explain *how* this offering memorandum shows that the defendants knew their earlier statements were false, as they must.  *See Liz Claiborne*, 814 F. Supp. 2d at 336 (to plead scienter based on recklessness, plaintiffs "must 'provide specific instances in which Defendants received information that was contrary to their public declarations.'" (*quoting Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imp. Bank of Comm.*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010)).  Plaintiffs do not

17

identify any information in the Offering Memorandum contradicting the defendants' previous statements.

### C. Uni-Ter's Investments in Lewis & Clark Defeat Any Inference of Scienter

The plaintiffs' scienter theory also fails because it cannot account for Uni-Ter's own significant investments in Lewis & Clark during the time of the supposed fraud. The plaintiffs suggest that Mr. Elsass and Ms. Dalton concealed Lewis & Clark's inevitable insolvency at the same time their own company invested half-a-million dollars in Lewis & Clark. (*See* Exs. B & C.) Any suggestion that Uni-Ter invested in Lewis & Clark while Mr. Elsass and Ms. Dalton knew it would ultimately fail "defies economic reason, and therefore does not yield a reasonable inference of" scienter. *Atl. Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505, 514 (S.D.N.Y. 1990). Rather, because of Uni-Ter's investments Mr. Elsass and Ms. Dalton's interests and the plaintiffs' interests were "aligned," defeating any inference of scienter. *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 337 (S.D.N.Y. 2000), *aff'd* 264 F.3d 131 (2d Cir. 2001).

### D. The Complaint Supports a Compelling Non-Fraudulent Inference

Not only do the complaint's allegations fail to support an inference of scienter, to the contrary, they strongly support a competing non-fraudulent inference: After years of profitable operations, Lewis & Clark entered into a new line of business (with the plaintiffs' knowledge and consent) and then faced unexpected losses. In response, the defendants disclosed the losses as they learned of them and attempted in good faith, albeit unsuccessfully, to save Lewis & Clark.

As alleged in the complaint, when the defendants learned that Lewis & Clark was suffering its first major losses, they (a) sent a memorandum to the board disclosing the unexpected losses and explaining Uni-Ter's planned response (Compl. ¶ 57); (b) executed the plan as described in the memorandum, including hiring an outside consultant to conduct a claims

18

review (*id.* ¶ 61); (c) disclosed a detailed report of the consultant's review clearly explaining the scope and results of the review within days of receiving it (*id.* ¶ 61-62); (d) disclosed "significantly increased claims reserves" to the board and explained that Lewis & Clark needed additional investments to survive (*id.* ¶¶ 56); (e) subsequently sought additional capital from Lewis & Clark's policyholders through an equity offering (*id.* ¶ 82); (f) continued to monitor and review the situation, including conducting a detailed internal claims review (*id.* ¶ 71); (g) retained outside consultants to conduct another review when it appeared necessary (*id.* ¶ 73); (h) disclosed a detailed report of that subsequent review within two business days of its completion (*id.* ¶ 92); (i) sought a capital contribution from the company's reinsurer (*id.* ¶ 94); and (j) discussed a possibly recapitalization with the company's regulators (*id.*).  Despite all of these efforts, however, the company failed.

These allegations show that the defendants promptly disclosed negative information—including the initial losses and both Praxis reports—as they learned the information.  The law is clear that a defendant's timely disclosures of unfavorable information negate any inference of an intentional failure to disclose information on the same topic.  *See In re Acterna Corp. Sec. Litig.*, 378 F. Supp. 2d 561, 578-79 (D. Md. 2005); *Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*, No. 08 Civ. 797, 2010 WL 1287058, at *19 (E.D. Wis. Mar. 30, 2010).

"Rather than suggesting an intent to deceive investors," these facts "exhibit the defendants engaging in a good-faith process to inform themselves and [their investors]" of the company's true condition.  *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 777 (2d Cir. 2010).  Indeed, no plausible reading of the facts alleged in the complaint supports an inference of scienter as cogent and compelling as this competing non-fraudulent inference.

III.   **THE PLAINTIFFS FAIL TO ALLEGE A TORT DIRECTED AT THE PUBLIC-AT-LARGE SUPPORTING A PUNITIVE DAMAGES CLAIM**

Finally, plaintiffs' claim for punitive damages must be dismissed because they do not allege an "egregious tort directed at the public at large," as required to recover punitive damages under New York law.  *Steinhardt Grp., Inc. v. Citicorp*, 272 A.D.2d 255, 257 (1st Dep't 2000). Under New York law, the purpose of punitive damages is "'not to remedy private wrongs but to vindicate public rights.'"  *Fulton v. Allstate Ins. Co.*, 14 A.D.3d 380, 381 (1st Dep't 2005) (citation omitted).  Accordingly, "to recover punitive damages, the plaintiff must allege an 'egregious tort directed at the public at large.'"  *Cross*, 2011 WL 2222350, at *2 (quoting *Steinhardt*, 272 A.D.2d at 257).  Here, plaintiffs allege, albeit inadequately, fraud in connection with a private business transaction between them and the defendants.  Because the complaint contains "no allegations concerning [Mr. Elsass and Ms. Dalton's] conduct directed to the public at large," plaintiffs' claim for punitive damages must be dismissed.  *Cross*, 2011 WL 2222350, at *3.

## CONCLUSION

For these reasons, defendants Sanford Elsass and Donna Dalton respectfully request that the plaintiffs' claims against them be dismissed with prejudice.


Dated:  September 30, 2013        \_\_\_\_\_s/ Jamie A. Levitt_____
       New York, New York      Jamie A. Levitt

                        MORRISON & FOERSTER LLP

                        Jamie A. Levitt
                        James J. Beha II
                        1290 Avenue of the Americas
                        New York, New York 10104
                        (212) 468-8000
                        jlevitt@mofo.com

                        *Attorneys for Defendants Sanford Elsass and Donna Dalton*