**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ONEIDA SAVINGS BANK; MARQUIS
COMPANIES I, INC.; PINNACLE
HEALTHCARE, INC.; ROHM SERVICES
CORPORATION; HEATHWOOD
HEALTH CARE CENTER, INC.; and
EAGLE HEALTHCARE, INC.

*Plaintiffs,*

*v.*

UNI-TER UNDERWRITING
MANAGEMENT CORPORATION; UNI-
TER CLAIMS SERVICES
CORPORATION; U.S. RE COMPANIES,
INC.; SANFORD ELSASS; DONNA
DALTON; JONNA MILLER; and
RICHARD DAVIES

*Defendants.*

---

Case No. 5:13-CV-0746
(MAD/ATB)

Oral Argument Requested

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS UNI-TER**
**UNDERWRITING MANAGEMENT CORP., UNI-TER CLAIMS SERVICES CORP.,**
**U.S. RE COMPANIES, INC., JONNA MILLER AND RICHARD DAVIES'S**
**MOTION TO DISMISS THE COMPLAINT**

CARLTON FIELDS, P.A.
Brian Rosner (Bar Roll No. 518312)
26 Broadway, 22nd Fl.
New York, NY 10004
Telephone: (212) 785-2577
Facsimile: (212) 785-5203
*Attorneys for Defendants Uni-Ter Underwriting*
*Management Corp., Uni-Ter Claims Services Corp.,*
*U.S. RE Companies, Inc., Jonna Miller and*
*Richard Davies*

<u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ....................................................................................................................1

THE COMPLAINT ................................................................................................................1

    The Parties ......................................................................................................................2

    The Purchase of the November 2011 Debentures...........................................................2

DOCUMENTS INTEGRAL TO THE PLEADINGS ...................................................3

ARGUMENT .........................................................................................................................3

    I.  Plaintiffs Fail to State a Claim Under the Exchange Act ...............................3

        A.    Plaintiffs do not plead any allegedly material false statements or omissions with the particularity required by the PSLRA. .............................................4

        B.    Plaintiffs do not plead facts supporting the requisite "strong inference" of each Defendant's scienter. ..........................................................................6

        C.    Plaintiffs do not plead with the particularity required by the PSLRA that they reasonably relied on any alleged misrepresentation or omission.........9

        D.    Plaintiffs do not adequately plead facts alleging loss causation. ...............12

    II.    Plaintiffs Fail to Allege a Control Person Violation.............................................13

        A.    Primary violation ......................................................................................14

        B.    Control over primary violator ...................................................................14

        C.    Culpable participation ...............................................................................15

    III.    All of Plaintiffs' State Law Claims Should be Dismissed.....................................16

        A.    The Complaint's failure to allege a misrepresentation is fatal to Plaintiffs' state law claims. ......................................................................................17

        B.    Plaintiffs fail to plead common law fraud..................................................19

i

C.       Plaintiffs fail to state a constructive fraud claim. ......................................20

D.       Plaintiffs fail to state a claim for negligent misrepresentation. .................21

E.       Plaintiffs fraudulent inducement claim fails..............................................21

F.       Plaintiffs fail to allege that Defendants were unjustly enriched at
         Plaintiffs' expense.....................................................................................22

IV.    Plaintiffs' Claim for Punitive Damages Must Be Dismissed................................23

V.     This Court Does Not Have Personal Jurisdiction Over Jonna Miller....................24

A.       New York's long-arm statute does not provide personal jurisdiction over
         Defendant Miller........................................................................................25

B.       Exercising personal jurisdiction over Defendant Miller would violate
         federal due process requirements................................................................29

CONCLUSION.................................................................................................................30

TABLE OF AUTHORITIES

Cases

*Acito v. IMCERA Group, Inc.*
   47 F.3d 27 (2d Cir. 1995) .......................................................................................9

*Agency Rent A Car Sys. v. Grand Rent A Car Corp.*
   98 F.3d 25 (2d Cir.1996)........................................................................................25

*Anschutz Corp. v. Merrill Lynch & Co.*
   690 F.3d 98 (2d Cir. 2012).....................................................................................21

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009).................................................................................................4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*
   493 F.3d 87 (2d Cir. 2007).....................................................................................14

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*
   171 F.3d 779 (2d Cir. 1999)...................................................................................25

*Barron Partners, LP v. Lab123, Inc.*
   No. 07 Civ. 11135(JSR), 2008 WL 2902187 (S.D.N.Y. July 25, 2008) .....................26

*Beck v. Mfrs. Hanover Trust Co.*
   820 F.2d 46 (2d Cir.1987).......................................................................................8

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007)............................................................................................3, 4

*Besicorp Grp., Inc. v. Crown Life Ins. Co.*
   No. 88-CV-114, 1992 WL 350603 (N.D.N.Y. Nov. 23, 1992) .............................17, 21

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*
   373 F.3d 296 (2d Cir. 2004)....................................................................................22

*Chambers v. Time Warner, Inc.*
   282 F.3d 147 (2d Cir.2002)......................................................................................3

*City of Syracuse v. Loomis Armored US, LLC*
   900 F.Supp.2d 274 (N.D.N.Y. Sep 28, 2012)..............................................3, 17, 20

*Clark v. Daby*
   751 N.Y.S.2d 622, 300 A.D.2d 732 (3d Dep't 2002)................................................23

*Computerized Radiological Serv. v. Syntex Corp.*
   786 F.2d 72 (2d Cir. 1986)......................................................................................17

*Cromer Fin. Ltd. v. Berger*
    137 F.Supp.2d 452 (S.D.N.Y. 2001)........................................................15, 16

*Cross v. Toyota Motor Corp.*
    No. 3:10-cv-1179, 2011 WL 2222350 (N.D.N.Y. June 7, 2011) ...........................................23, 24

*Denny v. Barber*
    576 F.2d 465 (2d Cir. 1978).........................................................................9

*Dura Pharmaceuticals v. Broudo*
    544 U.S. 336 (2005)................................................................................13

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*
    375 F.3d 168 (2d Cir. 2004)................................................................ passim

*Federman v. Empire Fire and Marine Ins. Co.*
    597 F.2d 798 (2d Cir. 1979)........................................................................17

*Finn v. Barney*
    471 Fed.Appx. 30, 34, 2012 WL 1003656 (2d Cir. 2012)...........................................14

*Fulton v. Allstate Ins. Co.*
    14 A.D.3d 380, 788 N.Y.S.2d 349 (1st Dep't 2005) ...........................................23

*Gander Mountain Co. v. Islip U-Slip LLC*
    923 F.Supp.2d 351 (N.D.N.Y. 2013).......................................................17, 22

*Goldsmith Motors Corp. v. Chemical Bank*
    41 A.D.3d 648, 838 N.Y.S.2d 631 (2d Dep't 2007)........................................23

*Hirsch v. Arthur Anderson & Co.*
    72 F.3d 1085 (2d Cir. 1995).........................................................................17

*Honeyman v. Hoyt (In re Carter–Wallace Sec. Litig.)*
    220 F.3d 36 (2d Cir.2000)...........................................................................8

*Iconix Brand Grp. v. Merrill Lynch, Pierce, Fenner & Smith*
    505 Fed.Appx. 14, 2012 WL 6097440 (2d Cir. Dec. 10, 2012) ...................................10

*In re AstraZeneca Secs. Litig.*
    559 F.Supp.2d 453 (S.D.N.Y. 2008), *aff'd,*

334 Fed.Appx. 404, 2009 WL 1796534 (2d. Cir. 2009) ...............................................7, 8

*In re First Cent. Fin. Corp.*
    377 F.3d 209 (2d Cir. 2004)........................................................................22

*In re Satyam Computer Services Ltd. Sec. Litig.*
    915 F.Supp.2d 450 (S.D.N.Y. 2013)........................................................14, 16

iv

*In re Wellcare Mgmt. Grp., Inc. Sec. Litig.*
  964 F.Supp. 632 (N.D.N.Y. 1997) ...............................................................14

*International Plaza Assoc., L.P. v. Lacher*
  63 A.D.3d 527, 881 N.Y.S.2d 414 (1st Dep't 2009) ....................................23

*Jazini v. Nissan Motor Co.*
  148 F.3d 181 (2d Cir. 1998)..........................................................................24

*Karabu Corp. v. Gitner*
  16 F.Supp.2d 319 (S.D.N.Y. 1998)..............................................................28

*King County, Wash. v. IKB Deutsche Industriebank, AG*
  769 F. Supp.2d 309 (S.D.N.Y. 2011)..........................................27, 28, 29, 30

*L-7 Designs, Inc. v. Old Navy, LLC*
  647 F.3d 419 (2d Cir. 2011)..................................................................17, 19

*Lama Holding Co. v. Smith Barney Inc.*
  88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996).........................19

*Lattanzio v. Deloitte & Touche*
  476 F.3d 147 (2d Cir. 2007)....................................................................4, 12

*Lewin Chevrolet-Geo-Oldsmobile Inc. v. Bender*
  639 N.Y.S.2d 180, 225 A.D.2d 916 (3d Dep't 1996) ...................................21

*Mangiafico v. Blumenthal*
  471 F.3d 391 (2d Cir.2006).............................................................................3

*McIntire v. China MediaExpress Holdings*
  927 F.Supp.2d 105 (S.D.N.Y. 2013).............................................................16

*MEE Direct, LLC v. Tran Source Logistics, Inc.*
  No. 12 Civ. 6916(SAS), 2012 WL 6700067 (S.D.N.Y. Dec. 26, 2012)........27

*New York Univ. v. Continental Ins. Co.*
  87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763) ..................................23

*Novak v. Kasaks*
  216 F.3d 300 (2d Cir. 2000)............................................................................9

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of America Corp.*
  __ F.Supp.2d__, 2013 WL 1664696 (S.D.N.Y. 2013) ..........................14, 16

*Pacific Inv. Mgmt. Co. v. Mayer Brown LLP*
  603 F.3d 144 (2d. Cir. 2010).........................................................................13

*Pilarczyk v. Morrison Knudsen Corp.*
  965 F.Supp. 311, 321 (N.D.N.Y. 1997), *aff'd*, 162 F.3d 1148 (2nd Cir.1998) ............................6

*Robinson v. Overseas Military Sales Corp.*
   21 F.3d 502 (2d Cir. 1994)...................................................................25

*Shields v. Citytrust Bancorp*
   25 F.3d 1124 (2d Cir. 1994)...................................................................7

*Steinhardt Group, Inc. v. Citicorp*
   272 A.D.2d 255, 708 N.Y.S.2d 91 (1st Dep't 2000) ..................................23

*Sveaas v. Christie's Inc.*
   No. 11-2064-CV, 2011 WL 6415192 (2d Cir. Dec. 22, 2011)....................19

*Three Five Compounds, Inc. v. Scram Technologies, Inc.*
   No. 11 Civ. 1616(RJH), 2011 WL 5838697 (S.D.N.Y. Nov. 21, 2011) ...............27, 29

*Upstate Networks, Inc. v. Early*
   6:11-CV-01154 LEK, 2012 WL 3643843 (N.D.N.Y. Aug. 23, 2012) .......................24, 25, 26, 27

*V Cars, LLC v. Israel Corp.*
   902 F.Supp.2d 349 (S.D.N.Y. 2012).........................................................27

## Statutory Authorities

15 U.S.C. § 78j ...................................................................................................1

15 U.S.C. § 78t(a) ..........................................................................................1, 13

15 U.S.C. § 78u-4(b)(1) ......................................................................................4

15 U.S.C. § 78u-4(b)(2) ......................................................................................4

17 C.F.R. §240.10b-5 .........................................................................................1

28 U.S.C. §1367...................................................................................................2

Section 10(b), Securities Exchange Act of 1934 ........................................1, 5

Section 302, N.Y. C.P.L.R.................................................................................25

## Rules

Rule 12(b)(2), Federal Rules of Civil Procedure ......................................1, 24

Rule 12(b)(6), Federal Rules of Civil Procedure .............................................1

Rule 8(a)(2), Federal Rules of Civil Procedure.................................................3

Rule 9(b), Federal Rules of Civil Procedure .....................................................4

vi

## INTRODUCTION

Uni-Ter Underwriting Management Corporation ("Uni-Ter"), Uni-Ter Claims Services Corporation ("UCSC"), U.S. RE Companies, Inc. ("U.S. RE"), Jonna Miller and Richard Davies (collectively, "Defendants") submit this memorandum of law in support of their motion to dismiss plaintiffs' complaint ("Complaint")[1] for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").  Ms. Miller also moves as to herself to dismiss the Complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2).

## THE COMPLAINT

The Complaint purports to assert a claim for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j, and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.  The Complaint also purports to assert a claim under Section 20(a) of the Exchange Act, which makes "controlling persons" jointly and severally liable for primary violations by persons under their control.  15 U.S.C. § 78t(a). Specifically, the Complaint alleges that Uni-Ter, through its officers and directed by U.S RE, made material misrepresentations and omissions that induced Plaintiffs, on or about November 7, 2011, to invest $2,200,000 in convertible debentures in Lewis & Clark LTC Risk Retention Group, Inc. ("Lewis & Clark") ("November 2011 Debentures").[2]  The Complaint avers that the November 2011 Debentures are securities under Section 10(b) and Rule 10b-5.[3]  Plaintiffs assert five New York State law claims over which this Court is alleged to have "supplemental jurisdiction" under 28 U.S.C. §1367.[4]

---

[1]     Civil Docket in Case No. 5:13-CV-0746 (MAD/ATB) ECF No. 1.
[2]     *Id.* ¶¶2-4, 6, 66.
[3]     *Id.* ¶¶100, 109.
[4]     *Id.* ¶¶22, 118-151.

**The Parties**

Lewis & Clark is a Nevada domiciled insurance company structured as a Risk Retention Group.[5] Plaintiffs are the policyholders, and equity owners, of Lewis & Clark.[6] Each Plaintiff appointed one individual to represent itself on Lewis & Clark's Board of Directors ("Board of Directors").[7] In addition, Plaintiff Oneida Savings Bank ("Oneida Bank") provided capital to Lewis & Clark in the form of a subordinated debenture, of which $1,000,000 was outstanding in the fall of 2011 ("Oneida Debenture").[8]

Plaintiffs allege that Sanford Elsass was Uni-Ter's President and Chief Executive Officer,[9] Donna Dalton was Uni-Ter's Chief Operating Officer and Chief Financial Officer,[10] Jonna Miller is Uni-Ter's Vice President of Claims,[11] and Richard Davies is U.S. RE's Chief Financial Officer (collectively, the "Individual Defendants.")[12] Plaintiffs further plead that Uni-Ter and USCS are Delaware corporations with their principal place of business in Georgia,[13] and that U.S. RE, the parent corporation of Uni-Ter, is a Delaware corporation with its principal place of business in New York.[14]

**The Purchase of the November 2011 Debentures**

Pursuant to a management agreement, Lewis & Clark engaged Uni-Ter "to provide all of the insurance company services necessary to run Lewis & Clark."[15] Plaintiffs allege that, in this management role, Defendants made misrepresentations and omissions during the September 21,

---

[5]       *Id*. ¶24.
[6]       *Id*. ¶44.
[7]       *Id*.
[8]       *Id*. ¶¶42, 78.
[9]       *Id*. ¶16.
[10]      *Id*. ¶17.
[11]      *Id*. ¶18.
[12]      *Id*. ¶19.
[13]      *Id*. ¶¶13, 14.
[14]      *Id*. ¶¶15, 33.

2011 ("September 2011 Board Meeting") and November 7, 2011 Board Meetings ("November 2011 Board Meeting").[16]  In reliance on the alleged misrepresentations and omissions made to the Board members, Plaintiffs purchased the November 2011 Debentures.[17]

DOCUMENTS INTEGRAL TO THE PLEADINGS[18]

The Praxis Report, the November 2011 Debentures and the Offering Memorandum are defined in and repeatedly referenced throughout the Complaint, and are integral to the same.[19] Defendants respectfully request that this Court consider these documents in their entirety.

ARGUMENT

**I.     Plaintiffs Fail to State a Claim Under the Exchange Act**

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed.R.Civ.P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'"  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007).  The pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *see id.* at 555, and "state a claim to relief that is plausible on its face."  *Id.* at 570.[20]

---

[15]     *Id.* ¶28.
[16]     *Id.* ¶¶64, 66.
[17]     *Id.* ¶¶66-67.
[18]     *See City of Syracuse v. Loomis Armored US, LLC*, 900 F.Supp.2d 274, 287 (N.D.N.Y. Sep 28, 2012). "Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are 'integral' to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir.2002))."
[19]     *See* ¶¶ 61-62, 71, 76, 91 (Praxis Report); ¶¶ 65-66, 68-69, 77, 82, 86-88, 100-101, 109-110, 119-120, 127-128, 134, 141-142, 149 (November 2011 Debentures); ¶¶ 82-87 (Offering Memorandum); *see also* Declaration of Brian Rosner dated September 30, 2013 ("Rosner Decl.") and exhibits attached thereto.
[20]     "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).

Over and above the particularity requirements of Rule 9(b) of the Fed.R.Civ.P,[21] the Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes "heightened pleading requirements" on plaintiffs seeking to state a claim under the Exchange Act.  *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 187 (2d Cir. 2004).  "[T]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).  The PSLRA also heightens the pleading requirement regarding state of mind. "[T]he complaint shall, with respect to each act or omission…state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

To state a claim against a defendant for securities fraud, a complaint must allege that, in connection with the purchase or sale of securities, each Defendant:  (1) made a misstatement or omission, (2) of a material fact, (3) with scienter, (4) upon which plaintiffs justifiably relied, and (5) which proximately caused plaintiffs' damages.  *See Lattanzio v. Deloitte & Touche*, 476 F.3d 147, 153 (2d Cir. 2007).  The First and Second Claims fail to plausibly plead these elements against any Defendant, individual or corporate, with the requisite heightened particularity.

A.   **Plaintiffs do not plead any allegedly material false statements or omissions with the particularity required by the PSLRA.**

Plaintiffs allege a violation of Section 10(b) of the Exchange Act against Uni-Ter, Mr. Elsass, Ms. Dalton, Ms. Miller and Mr. Davies.[22]  Plaintiffs aver that Uni-Ter, at U.S.RE's direction, made the following "material representations and omissions…a) the statement that

---

[21]    Fed.R.Civ.P 9(b) provides that "in all averments of fraud or intent, the circumstances constituting the fraud or mistake shall be stated with particularity."

there were not any claims developments not previously reported during the November 7, 2011 board meeting; and (b) the failure to disclose the existence of the Praxis Audit."[23]   These allegations are typical of the inadequacy of the Complaint, which fails to allege that any Defendant spoke or submitted documents at the November 2011 Board Meeting.  Indeed, the only Defendant alleged to have even attended the November 2011 Board Meeting is Mr. Davies, and his alleged offense is that he said nothing.[24]   The Complaint contains no specific allegation identifying the person making such "statements" or specifying the words spoken; rather, it sets forth the conclusory allegation that Uni-Ter and U.S. RE provided "assurances" to Plaintiffs.[25]

Similarly, it is not plausible, as alleged, that any Defendant failed "to disclose the existence of the Praxis Audit" on or prior to the November 7, 2011, the date of both the Board Meeting and the Plaintiffs' alleged purchases of the securities.[26]   The Praxis Report is alleged to have been completed on December 16, 2011.[27]   Plaintiffs themselves aver that Praxis had not even been engaged to do an audit until December 2011 – weeks after the November 2011 Board Meeting and securities' purchases.[28]   In sum, there was no Praxis audit to disclose, or fail to disclose, on November 7, 2011.

Plaintiffs also allege misrepresentations and omissions at the September 2011 Board Meeting.  Each Defendant is alleged to have indicated, through words or silence, "no" in response to a question from "the directors" - "whether there were any claims developments not

---

[22]     Complaint ¶¶99 to 107.
[23]     *Id.* ¶101.
[24]     *Id.* ¶111.
[25]     *Id.* ¶66.
[26]     *See, e.g.*, *id.* ¶¶65-66.
[27]     *Id.* ¶¶71, 73.
[28]     *Id.* ¶73.

previously reported."[29]   The "no" response was allegedly fraudulent because Defendants

(excluding Ms. Dalton) knew "that Praxis was going to be evaluating the amount of Lewis &

Clark's loss reserves because it was likely that the reserves needed to be materially larger."[30]

The Complaint is devoid of any allegation attributing actual words spoken by any Defendant

other than a general allegation that Ms. Miller allegedly replied negatively about "any claims

developments not previously reported" and that Mr. Elsass agreed.[31]   Aside from the ambiguity

of the alleged inquiry, the allegation that the response was dishonest is conclusory and

speculative and does not allege misrepresentation in her response.

 The Complaint fails to specify with particularity any allegedly false and misleading

statements made to Plaintiffs by Defendants, or how any general or conclusory statements or

omissions by Individual Defendants, to wit: i) silence by Mr. Davies and Ms. Dalton, ii) the word

"none" by Ms. Miller, iii) Mr. Elsass's agreement to word "none," iv) or the "assurances" from

Uni-Ter and U.S RE, could be considered materially false and misleading.   Accordingly

Plaintiffs' First Claim should be dismissed.   *See Pilarczyk v. Morrison Knudsen Corp*., 965

F.Supp. 311, 321 (N.D.N.Y. 1997), *aff'd,* 162 F.3d 1148 (2nd Cir.1998) (dismissing claims

under the Exchange Act because, *inter alia*, plaintiffs failed to explain "in what respects the

statements at issue were false," and merely alleged in general and conclusory terms that these

statements were false without alleging why) (citations omitted).

 **B.** **Plaintiffs do not plead facts supporting the requisite "strong inference" of each Defendant's scienter.**

 "As part of a securities fraud claim, plaintiffs must allege facts that give rise to a strong

inference of scienter. *Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1128 (2d Cir. 1994).   A strong

---

[29] *Id*. ¶64.

[30] *Id*. ¶72, 79.

inference may be established either '(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.' *Id.*  The inference must be 'cogent and at least as compelling as any opposing inference of nonfraudulent intent.'"  *In re AstraZeneca Secs. Litig.*, 559 F.Supp.2d 453, 467-468 (S.D.N.Y. 2008), *aff'd*, 334 Fed.Appx. 404, 2009 WL 1796534 (2d. Cir. 2009) (citation omitted).

First, the Complaint fails to aver that the Individual Defendants had a motive to commit fraud or acted with scienter.[32]  Uni-Ter's and U.S. RE's alleged motive to mislead Plaintiffs about reserves to delay Lewis & Clark's insolvency so as to allow Uni-Ter to continue to collect "management fees" from Lewis & Clark and to expand market share[33] is conclusory and implausible. Plaintiffs do not plead how much Uni-Ter collected in fees from Lewis & Clark by "putting off" the insolvency.  It is not plausible that a reputable corporation (and its officers) would subject themselves to the reputational loss (and civil and criminal liability for fraud) for an insignificant sum of money, or in a situation where insolvency was inevitable.   Nor do Plaintiffs plead how much money Defendants thought that they would gain by the alleged fraud.

Numbers are particularly important to the allegation of motive here.  Significantly, the Complaint omits that Uni-Ter purchased $500,000 of the "fraudulent" debentures:  $300,000 purchased three days prior to the November 2011 Board Meeting and an additional $200,000 purchased two months after the Praxis audit.[34]

---

[31]      *Id.* ¶64.
[32]      The group pleading document cannot apply to create a presumption of scienter as to individual defendants. 559 F.Supp.2d at 472 (dismissing claims because plaintiffs failed to allege scienter sufficient to support the individual liability of any individual defendant).
[33]      Complaint ¶¶79, 81, 88.
[34]      *See* Rosner Decl. ¶5, Ex. 3.

No facts are pled as to why Uni-Ter would purchase the allegedly fraudulent securities. Indeed, the most plausible explanation is that Uni-Ter (and its parent, U.S. RE) thought in good faith that they invested their funds in a turnaround effort, not that they were defrauding others, and themselves.

The Complaint's allegations regarding statements made in the Offering Memorandum equally fail to establish scienter.[35] The Complaint asserts that the Offering Memorandum, issued "after the Plaintiffs executed the November 2011 Debentures," adequately "show[s] that Uni-Ter was acting with *scienter*."[36] But factual allegations post-dating the alleged fraud are insufficient to plead *scienter*. *See, e.g.*, *Eternity Global Master Fund Ltd.* 375 F.3d at 187 (refusing to consider circumstantial evidence of *scienter* occurring after the alleged wrong).

Nor have Plaintiffs pled scienter by "'identifying circumstances indicating conscious misbehavior by the defendant.' *Beck v. Mfrs. Hanover Trust C*o., 820 F.2d 46, 50 (2d Cir.1987). However, 'the strength of the circumstantial allegations must be correspondingly greater.' *Id*. Conscious misbehavior has been defined as 'conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.' *Honeyman v. Hoyt (In re Carter–Wallace Sec. Litig.)*, 220 F.3d 36, 39 (2d Cir.2000)." *In re AstraZeneca Secs. Litig.,* 559 F.Supp.2d at 469.

Here, the Complaint is devoid of any allegation that any Defendant acted with reckless conduct that is highly unreasonable or an extreme departure from the standards of ordinary care.

Lastly, Defendants cannot be liable under a theory of "fraud by hindsight." *See, e.g., Denny v. Barber,* 576 F.2d 465, 470 (2d Cir. 1978). Under the securities laws, "corporate

---

[35]      *Id.* ¶¶82-87.

officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them…thus, allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (citing *Acito v. IMCERA Group, Inc.*, 47 F.3d 27, 53 (2d Cir. 1995)).

      **C.**    **Plaintiffs do not plead with the particularity required by the PSLRA that they reasonably relied on any alleged misrepresentation or omission.**

Plaintiffs allege that, on or about November 7, 2011, in reliance on prior misstatements and omissions, they purchased the November Debentures; and, had they known the "truth" about Lewis & Clark's troubled financial situation (the situation revealed in the December 2011 Praxis audit), they would not have purchased the debentures.[37]

This allegation of reliance is factually inaccurate.  Plaintiffs Marquis Companies I, Inc., ("Marquis"), Pinnacle Healthcare, Inc. ("Pinnacle"), Heathwood Health Care Center, Inc. ("Heathwood") and Rohm Services Corp. ("Rohm") did not invest "$290,000 each" prior to the December 2011 Praxis audit.[38]  They invested as follows:

| | | |
|---|---|---|
| Marquis Companies I, Inc. | October 26, 2011 | $220,000 |
| Pinnacle Healthcare, Inc. | November 9, 2011 | $220,000 |
| Heathwood Health Care Center, Inc. | November 14, 2011 | $220,000 |
| Rohm Services Corporation | November 15, 2011 | $220,000 |
| Marquis Companies I, Inc. | February 14, 2012 | $ 70,000 |
| Pinnacle Healthcare, Inc. | February 16, 2012 | $ 70,000 |
| Rohm Services Corporation | February 28, 2012 | $ 70,000 |
| Heathwood Health Care Center, Inc. | February 29, 2012 | $ 70,000[39] |

These four Plaintiffs purchased debentures both before and after the December 2011 Praxis audit.  The PSLRA requires reasonable reliance.  *See Iconix Brand Grp. v. Merrill Lynch,*

---

[36]    *Id.* ¶¶82, 87.
[37]    Complaint ¶¶77-78.
[38]    *Id.* ¶¶66-67.

*Pierce, Fenner & Smith*, 505 Fed.Appx. 14, 2012 WL 6097440, at *17 (2d Cir. Dec. 10, 2012). When purchasing Lewis & Clark debentures in February 2012, these four Plaintiffs cannot credibly plead that they reasonably relied on information that they had thought to be inaccurate since December 2011.

The Complaint's allegations misstate the dates of these four Plaintiffs' purchases.[40]  Nor do the allegations state what information Plaintiffs were in fact relying upon in February 2012. This pattern of inaccuracy creates a doubt regarding what they relied upon regarding their earlier October and November 2011 debentures purchases.  In short, their conclusory allegation of reliance as to these purchases lacks particularity and is inaccurate.

Plaintiff Eagle Healthcare, Inc.'s ("Eagle") pleading of reliance also conflicts with the facts regarding its conduct.  Eagle made its debenture purchase prior to November 7, 2012.[41] However, it is not credible that, as pleaded, Eagle had acted in reliance on representations and omissions shown to be fraudulent by the December Praxis audit.  Each Plaintiff assigned one of its officers to be a member of the Board of Directors; Jeff Marshall was Eagle's Board member.[42]  The debentures purchased by Marquis, Rohm, Pinnacle and Heathwood (and a $200,000 debenture purchased by Uni-Ter) in February 2012 were executed by Mr. Marshall in his capacity as Eagle's representative on the Board. [43]  It is not plausible that Eagle permitted its officer to execute debentures in February 2012 when Eagle had known since December 2011 that the debentures had been issued based on alleged false representations.   Nothing is credibly

---

[39]     Rosner Decl. ¶5, Ex. 3.
[40]     *Id.*
[41]     *Id.*
[42]     Complaint ¶¶44, 59.
[43]     Rosner Decl. ¶5, Ex. 3.

pleaded to suggest that Eagle's state of mind was different in February 2012 than it was in 2011 when it purchased its debenture.

Nor is Oneida Bank's allegation of reliance plausible – that it would not have purchased its November 2011 Debenture,[44] and would have taken "immediate action" to collect the outstanding Oneida Debenture, had it known the "truth" revealed in the December 2011 Praxis audit.[45]  The alleged "truth" did not prevent the other five Plaintiffs from purchasing or selling debentures, and Oneida Bank nowhere pleads why its knowledge or conduct was different from the other Plaintiffs.

In addition, Lewis & Clark dissolved in November 2012, eleven months after Oneida Bank allegedly learned the "truth" about Lewis & Clark's financial condition.  Nothing is pleaded to explain why Oneida Bank did not take "immediate action" in December 2011 or in the subsequent eleven months to collect on the 2011 or prior debentures.

The over-arching claim of reliance is that Defendants presented a rosy picture of Lewis & Clarke's troubled financial position, and that Plaintiffs reasonably relied on this false representation when purchasing the Debentures.[46]  The conclusory allegation of reasonable reliance is unsupported and contrary to the known facts regarding the information available to Plaintiffs.

Furthermore, Plaintiffs are the owners of Lewis & Clark.[47]  Each Plaintiff appointed an officer to sit as a member of the Board of Directors.[48]  Plaintiffs do not plead that any Board member failed in his or her duty to diligently obtain and review material regarding the financial

---

[44]    Complaint ¶¶77-78.
[45]    Complaint ¶78.
[46]    *Id*. ¶¶72-73, 76.
[47]    *Id*. ¶¶24, 26, 44.
[48]    *Id*. ¶44.

condition of Lewis & Clark.

Nor can there be any credible allegation that the Board members were unaware of, or failed to report to Plaintiffs, that Lewis & Clark was in financial difficulty and that the possible consequences could be dire.   The Offering Memorandum explicitly warned that "The Company has experienced significant underwriting losses in 2011…,"[49] and "[i]f the Company should experience substantial adverse claims, its surplus could  be depleted below the required minimum surplus amounts, in which case the Company  could lose its ability to continue writing insurance or <u>it could be placed in  receivership</u>"(emphasis added).[50]  The Offering Memorandum referred to the Plaintiffs' 2011 debenture purchases (required "as a result of significant underwriting losses"[51]) and explicitly warned that the capital thus raised could prove to be inadequate:  "The Company may, however, require additional financing to support its operations if the Company sustains additional losses."[52]

> **D.     Plaintiffs do not adequately plead facts alleging loss causation.**

Plaintiffs must plead economic loss and loss causation, with loss causation being "the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff."  Lattanzio, 476 F.3d at 157 (citation omitted).  It is not enough that there be a misrepresentation and an economic loss; the deception must be the proximate cause of the loss. *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336, 342-344 (2005).   Plaintiffs plead fraudulent representations "on or about November 7, 2011" that caused them to purchase securities, or defer collecting on a debt, with the "truth" of the misrepresentations not being known until December

---

[49]     Rosner Decl. ¶5, Ex. 2 at p. 3.
[50]     *Id*. at p. 9.
[51]     *Id*.
[52]     *Id*. at p. 10.

2011.[53]  The investments were "lost" a year later, when Lewis & Clark dissolved on November 11, 2012.[54]  Regarding the one-year gap between December 2011 and November 2012, Plaintiffs plead nothing about Lewis & Clark's business, other than "[n]one of Uni-Ter's or U.S. Re's efforts in preserving Lewis & Clark's capital structure succeeded."[55]  Plaintiffs do not plead loss causation with the particularity required by the PSLRA.   The passage of time is important.  The longer the period between the investment and the loss, the "more likely that other factors caused the loss."  *Dura*, 544 U.S. at 343.  Although Plaintiffs refer to Uni-Ter's and U.S RE's efforts to "preserve" Lewis & Clark's capital structure, nothing is alleged regarding the details of those efforts or, more importantly, the specifics of why those efforts failed.

## II.      Plaintiffs Fail to Allege a Control Person Violation.

Plaintiffs allege a claim against Defendant U.S. RE under Section 20(a) of the Exchange Act[56] which makes "controlling persons" jointly and severally liable for primary violations by persons under their control.  15 U.S.C. § 78t(a).  A Section 20(a) claim requires the establishment of an underlying primary violation – here, a Section 10(b) claim – by another person subject to control.  Because the First Claim does not state a claim against any Defendants, there is no predicate primary securities violation and the Section 20(a) claim must also be dismissed.  *See Pacific Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 160 (2d. Cir. 2010); *Finn v. Barney*, 471 Fed.Appx. 30, 34, 2012 WL 1003656, at*3 (2d Cir. 2012) ("Having concluded that the complaint fails to state a claim for any primary violation of the securities laws, we also affirm the district court's dismissal of plaintiffs' Section 20(a) claim alleging that Citigroup Inc. is liable as a controlling person.")

---

[53]      Complaint ¶¶66, 77, 78.
[54]      *Id*. ¶¶96-97.
[55]      *Id*. ¶96.

Even assuming, *arguendo*, that Plaintiffs have adequately pled that one of the Defendants was a primary violator of the Exchange Act, Plaintiffs have failed to sufficiently plead not only that under Section 20(a) U.S. RE was a "controlling person" of a primary violator, but also any particularized facts as to U.S. RE's culpable participation in the Defendants' alleged fraud.[57]

### A.  Primary violation

As discussed in Section I, Plaintiffs have failed to plead a primary violation of Section 10(b) by any Defendant and thus have failed to satisfy the first prong of the Section 20(a) claim.

### B.  Control over primary violator[58]

To plead control adequately under Section 20(a), Plaintiffs "must plead 'actual control, not merely control person status.'"  *In re Satyam Computer Services Ltd. Sec. Litig.*, 915 F.Supp.2d 450, 482 (S.D.N.Y. 2013) (citation omitted); *see also Cromer Fin. Ltd. v. Berger*, 137 F.Supp.2d 452, 484 (S.D.N.Y. 2001) (noting that actual control over the controlled person and the transactions at issue is necessary to establish control person liability).

Plaintiffs unequivocally neglected to plead actual control, indeed any control, by U.S. RE.

---

[56]     *Id*. ¶¶108-117.

[57]     To establish a prima facie case of control person liability, Plaintiffs must allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007); *see also Pa*. *Pub. Sch. Emps.' Ret. Sys. v. Bank of America Corp.*, __ F.Supp.2d__, 2013 WL 1664696, at *6 (S.D.N.Y. 2013) (To survive a motion to dismiss under Section 20(a) of the Exchange Act, a plaintiff must allege: "(1) an underlying primary violation by the controlled person; (2) control over the controlled person; and (3) particularized facts as to the controlling person's culpable participation in the fraud perpetrated by the controlled person"(citations and internal quotation marks omitted));  *In re Wellcare Mgmt. Grp., Inc. Sec. Litig.*, 964 F.Supp. 632, 640 (N.D.N.Y. 1997) (stating that to establish a claim under Section 20(a), a plaintiff must allege a primary violation, scienter, and control of the primary violator by the defendant) (citation omitted).

[58]     With respect to the second prong, Plaintiffs "need only plead facts supporting a reasonable inference of control."  *Cromer Fin. Ltd. v. Berger*, 137 F.Supp.2d 452, 484 (S.D.N.Y. 2001) (internal quotations and citation omitted).

The Complaint simply avers that U.S. RE is Uni-Ter's parent company[59] and that Individual Defendants were or are officers of either Uni-Ter or U.S. RE.[60]  Plaintiffs do not plead that U.S. RE had a duty to control, or the authority or power to control, or that it exercised any control, over Defendants, including its alleged subsidiary;[61] in fact, other than one instance unrelated to this claim,[62] "control" is not pled anywhere in the Complaint.  Nor do Plaintiffs plead that U.S. RE exercised direction, influence, supervision, oversight or management of any Defendant, except conclusory allegations with respect to Uni-Ter.[63]

Moreover, the Complaints' Section 20(a) claims are boilerplate and simply repeat prior allegations that U.S. RE directed Uni-Ter to make material representations and omissions with respect to the November 2011 Board Meeting, failed to disclose the existence of the Praxis audit, and that Defendant Davies remained silent during the September 2011 Board Meeting despite knowing that Uni-Ter's statements made material misstatements or omissions.[64]

As such, Plaintiffs have failed to plead facts supporting a reasonable inference of control against U.S. RE and thus failed to satisfy the second prong of the Section 20(a) claim.

### C.  Culpable participation

Allegations of a controlling person's culpability are subject to the PLSRA's heightened pleading standard.  *Cromer Fin. Ltd.*, 137 F.Supp.2d at 484.  Plaintiffs "must allege at least 'particularized facts of the controlling person's conscious misbehavior or recklessness.'" *In re Satyam Computer Services Ltd. Sec. Litig.,* 915 F.Supp.2d 450 at 482-483 (citations omitted).

---

[59]     Complaint ¶¶4, 33.
[60]     *Id*. ¶¶16-19.
[61]     *See generally* Complaint.
[62]     *Id.* ¶88.
[63]     *Id.* ¶¶4, 6.
[64]     *Id*. ¶¶4, 6, 64, 110-111.

Other than the conclusory allegations with respect to Defendants Uni-Ter and Davies,[65] the Complaint is silent as to U.S. RE's role in the controlled persons' fraudulent conduct, and fails to allege any particularized facts of U.S. RE's culpable participation in the fraud perpetrated by the controlled persons or any specific allegations as to what U.S. RE did or failed to do as a participant in Defendants' alleged primary violation.

Because the Complaint fails to plead with particularity that U.S. RE knew or should have known that the primary violators were engaged in fraudulent conduct, Plaintiffs fail to meet the third prong and, as such, the Section 20(a) claim must be dismissed. *See In re Satyam Computer Services Ltd. Sec. Litig.,* 915 F.Supp.2d. at 483; *see also McIntire v. China MediaExpress Holdings*, 927 F.Supp.2d 105, 138 (S.D.N.Y. 2013) (dismissing Section 20(a) claim because Plaintiffs pled only general and conclusory allegations, which failed to meet the heightened pleading standards of the PSLRA); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of America Corp.*, 874 F.Supp.2d 341, 368-69 (S.D.N.Y. 2012) (dismissing Section 20(a) claims for failure to plead a culpable state of mind with respect to the defendants).

### III.    All of Plaintiffs' State Law Claims Should be Dismissed.

Without viable federal claims, this Court should not retain jurisdiction over the Complaint's pendant state law claims; "[d]ismissal of [remaining] state law claim[s] is the recommended procedure . . . in cases where the federal claim is disposed of prior to trial." *Federman v. Empire Fire and Marine Ins. Co.*, 597 F.2d 798, 809 (2d Cir. 1979).  Even if this Court retains jurisdiction, each claim should nonetheless be dismissed.  Plaintiffs' state law claims fail for the same reasons the federal claims fail:  Plaintiffs fail to allege a material misrepresentation and, as a matter of law, cannot reasonably rely on Uni-Ter's purported

---

[65]    *Id.*

misstatement at the September 2011 Board Meeting.

### A. The Complaint's failure to allege a misrepresentation is fatal to Plaintiffs' state law claims.

An allegation of misrepresentation is an essential element to each of Plaintiffs' claims of common law fraud, constructive fraud, negligent misrepresentation, and fraudulent inducement. *See Computerized Radiological Serv. v. Syntex Corp.*, 786 F.2d 72, 76 (2d Cir. 1986) (misrepresentation is an essential element of a fraudulent inducement claim); *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F.Supp.2d 351, 369 (N.D.N.Y. 2013) (misrepresentation required for negligent misrepresentation claims); *City of Syracuse v. Loomis Armored US, LLC*, 900 F.Supp.2d 274, 300 (N.D.N.Y. 2012) (same requirement for common law fraud claims); *Besicorp Grp., Inc. v. Crown Life Ins. Co.*, No. 88-CV-114, 1992 WL 350603, at *4 (N.D.N.Y. Nov. 23, 1992) (same for constructive fraud claims). And though this Court must accept as true all well-pleaded facts in the Complaint, "[t]his presumption of truth . . . does not extend to legal conclusions." *Gander*, 923 F. Supp. 2d at 357. Nor does it extend to statements "contradicted by more specific allegations or documentary evidence—from the Complaint and from the exhibits attached thereto." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). Accordingly, dismissal of a complaint is proper if its claims are contradicted by specific factual allegations. *See, e.g.*, *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995).

Here, Plaintiffs rely on Uni-Ter's alleged misstatement to the Board of Directors at the September 2011 Board Meeting that "there were not any claims developments not previously reported."[66] This statement was false, Plaintiffs assert, because "Uni-Ter knew, but did not disclose, that it had retained Praxis to audit the claims and that it had received the audit findings

before the November 7, 2011 meeting."[67]  However, specific factual allegations in the Complaint contradict this statement.  First, Plaintiffs acknowledge that Uni-Ter did not retain Praxis to audit Uni-Ter's claims before November 7, 2011; rather, it retained Praxis in September 2011 only "to do a complete analysis of the claims *process*."[68]  This analysis, rather than constituting a full-scale audit, only "commented on the *reserve methodology in a sample* of nine claim files."[69]  The Praxis Report confirms this purpose.[70]  Thus, Plaintiffs acknowledge that the Praxis Report was not an audit of Lewis & Clark's existing claims.

Second, the only other potential audit referenced by Plaintiffs occurred after the November 2011 Debentures; Plaintiffs acknowledge that Uni-Ter did not "retain[] Praxis [until] *December 2011* to complete its full claims review."[71]  Uni-Ter's December retention of Praxis and audit cannot form the basis of Plaintiffs claim that Uni-Ter failed to disclose the audit findings prior to the November 2011 Board Meeting.

Third, Plaintiffs admit to receiving the Praxis Report before making their investments.[72]  Accordingly, Plaintiffs' claims regarding Defendants' alleged misrepresentation are contradicted by the specific allegations in the Complaint, and therefore do not benefit from a presumption of truth.  *Sveaas v. Christie's Inc.*, No. 11-2064-CV, 2011 WL 6415192, at *2 (2d Cir. Dec. 22, 2011) ("a court need not feel constrained to accept as truth pleadings that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely."); *L-7 Designs*, 647 F.3d at 422.  The Third through Seventh Claims each depend on the existence of a

---

[66]     Complaint ¶¶119, 127, 134, 141.
[67]     *Id.* ¶119.
[68]     *Id.* ¶57 (emphasis added).
[69]     *Id.* ¶62 (emphasis added).
[70]     Praxis Report at 1(stating that focus of limited analysis was "to review and comment on …the reserving methodology being utilized by Uni-Ter").
[71]     Complaint ¶73 (emphasis added); *see also id.* ¶62.

false statement by Uni-Ter.  But because of the contradictory factual allegations in the Complaint, Plaintiffs fail to adequately plead misrepresentation and dismissal is proper.

**B.      Plaintiffs fail to plead common law fraud.**

To state a claim for fraudulent misrepresentation or omission, Plaintiffs must show "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996); *see also Eternity Global Master Fund Ltd,* .375 F.3d at 186-187.  Here, Plaintiffs generally allege that Uni-Ter's purported statement that "there were not any claims developments not previously reported" and its purported "fail[ure] to disclose the Praxis Group audit until after Plaintiffs entered into the November 2011 Debentures" were fraudulent.[73]

First, as noted in herein, Plaintiffs fail to plead a misrepresentation.  Plaintiffs also fail to plead a material omission of fact.  Plaintiffs received the results of the only purported audit in existence prior to the November 7 debenture investments.[74]  Consequently, Plaintiffs inadequately plead that Defendants "fail[ed] to disclose the Praxis Group audit." [75]

Second, as discussed in Section I, Plaintiffs fail to adequately plead *scienter*.  The Third Claim alleges that "Defendants intended for Plaintiffs to rely on the false misrepresentations and material omissions" and that "Defendants' desire to continue Lewis & Clark's operations…motivated their deceptions."[76]  But "[t]hese conclusory allegations, which fail to

---

[72]      *Id.*¶61.
[73]      *Id.* ¶¶119-120.
[74]      *Id.* ¶¶61, 73.
[75]      *Id*. ¶120.
[76]      *Id.* ¶¶121-122.

allege with particularity that Defendant[s] intended to defraud Plaintiff, are insufficient and unsupported by the factual underpinnings of the…[C]omplaint." *Loomis*, 900 F.Supp.2d at 301-302.

The Complaint's allegations regarding statements made in the Offering Memorandum equally fail to establish *scienter*.[77]  The Complaint asserts that the Offering Memorandum, issued "after the Plaintiffs executed the November 2011 Debentures," adequately "show[s] that Uni-Ter was acting with *scienter*."[78]  But factual allegations post-dating the alleged fraud are insufficient to plead *scienter*.  *See, e.g.*, *Eternity*, 375 F.3d at 187 (refusing to consider circumstantial evidence of *scienter* occurring after the alleged wrong).

Third, Plaintiffs fail to adequately plead reasonable reliance on Defendants' purported statement.  Plaintiffs allege that Defendants made a false statement and omission when they failed to disclose "concerns about the adequacy of claims reserves raised in the September 15, 2011 Praxis report."[79]  However, Plaintiffs concede that they received written copies of that report,[80]  and, accordingly, they are now precluded from relying on Defendants' alleged oral statement or omission that contradicted the substance of that report.  "Where, as here, a written instrument contains terms different from those orally or otherwise represented, a person is presumed to have read the writing and may not claim that he or she relied on the representations."  *Lewin Chevrolet-Geo-Oldsmobile Inc. v. Bender*, 639 N.Y.S.2d 180, 181, 225 A.D.2d 916 (3d Dep't 1996).

### C.      Plaintiffs fail to state a constructive fraud claim.

"The elements of a cause of action for constructive fraud are the same as those to recover

---

[77]      *Id.* ¶¶82-87.
[78]      *Id.* ¶¶82, 87.
[79]      *Id.* ¶¶71, 119-120.

for actual fraud with the crucial exception that the element of *scienter* is dropped and is replaced by a requirement that the plaintiff prove the existence of a fiduciary or confidential relationship." *Besicorp*, 1992 WL 350603, at *4.   Claim Four, like Plaintiffs' claim for common law fraud, fails to adequately plead a misrepresentation by Defendants or reasonable reliance by Plaintiffs. Thus, Claim Four fails for the same reasons stated above**.**

> **D.** **Plaintiffs fail to state a claim for negligent misrepresentation.**

 "To state a claim for negligent misrepresentation under New York law, the plaintiff must allege that…the defendant made a false representation that he or she should have known was incorrect…[, and that] the plaintiff reasonably relied on it to his or her detriment." *Anschutz Corp. v. Merrill Lynch & Co.* 690 F.3d 98, 114 (2d Cir. 2012) (citation omitted).  Plaintiffs' negligent misrepresentation claim relies on the same allegedly false statement that provides the basis for their fraud claims.[81]  Thus, Plaintiffs Fifth Claim fails for the same rationale stated above.  And, the Plaintiffs' acknowledged receipt of the Praxis Report is fatal to its claim of reasonable reliance.  *Lewin*, 639 N.Y.S.2d at 181 (plaintiff cannot rely on oral representations regarding written documents in her possession).

Finally, the negligent misrepresentation claim must be dismissed as to U.S. RE for the independent reason that the Complaint fails to allege that U.S. RE made any misrepresentation; rather, it states only that, at the September 21 Board Meeting, "Mr. Davies of U.S. Re said nothing."[82]

> **E.** **Plaintiffs fraudulent inducement claim fails.**

"To prove fraudulent inducement, a plaintiff must allege that: (1) the defendant made a

---

[80]     *Id.* ¶61.

[81]     *Id.* ¶134.

[82]     *Id.* ¶64.

material, false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Gander*, 923 F. Supp. 2d at 366 (internal quotations omitted).  Thus, these elements are identical to those for common law fraud.  *See Eternity Global*, 378 F.3d at 186-187.  For all of the reasons that Plaintiffs Third Claim for common law fraud fails, Plaintiffs Sixth Claim for fraudulent inducement similarly fails.

### F.    Plaintiffs fail to allege that Defendants were unjustly enriched at Plaintiffs' expense.

To succeed on a claim for unjust enrichment in New York, Plaintiffs must show that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).  A finding of unjust enrichment, however, is prohibited "in the face of a valid and enforceable written agreement."  *In re First Cent. Fin. Corp.*, 377 F.3d 209, 213 (2d Cir. 2004).  Here, Plaintiffs acknowledge that all obligations between the parties were governed either by the terms of the Management Agreement or the terms of the various debentures,[83] and, as such, Plaintiffs cannot prevail on their quasi-contractual claim.  *In re First Cent.*, 377 F.3d at 213 ("unjust enrichment would only exist where no prior agreement governed the rights of the parties").

Moreover, the Complaint is bereft of any allegation that Defendants were enriched at ***Plaintiffs'*** expense; rather, it states that Defendants Uni-Ter and UCSC were "unjustly enriched by receiving and retaining management fees ***from Lewis & Clark***."[84]  "[T]he mere fact that the [Plaintiffs'] activities bestowed a benefit on the defendant[s] is insufficient to establish a cause of

---

[83]    *Id.* ¶¶28-30, 69.
[84]    *Id.* ¶149 (emphasis added).

action for unjust enrichment." *Clark v. Daby*, 751 N.Y.S.2d 622, 623, 300 A.D.2d 732, 732 (3d

Dep't 2002).   Accordingly the Seventh Claim also fails and must be dismissed.

### IV.    Plaintiffs' Claim for Punitive Damages Must Be Dismissed.

Plaintiffs' claim for punitive damages against Defendants is improper and must be

dismissed.  Under New York law, punitive damages are not recoverable unless such damages are

"necessary to deter defendant and others like it from engaging in conduct that may be

characterized as 'gross' and 'morally reprehensible,' and of 'such wanton dishonesty as to imply

a criminal indifference to civil obligations.'" *Cross v. Toyota Motor Corp.*, No. 3:10-cv-1179,

2011 WL 2222350, at *2 (N.D.N.Y. June 7, 2011) (citing *New York Univ. v. Continental Ins.*

*Co.,* 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763).

Thus, to recover punitive damages, Plaintiffs must allege an "egregious tort directed at

the public at large." *Id.* (citing *Steinhardt Group, Inc. v. Citicorp,* 272 A.D.2d 255, 257, 708

N.Y.S.2d 91 (1st Dep't 2000); *International Plaza Assoc., L.P. v. Lacher,* 63 A.D.3d 527, 528,

881 N.Y.S.2d 414 (1st Dep't 2009) (punitive damages are not recoverable in a breach of contract

action in which no public rights are alleged to be involved.); *Goldsmith Motors Corp. v.*

*Chemical Bank,* 41 A.D.3d 648, 649, 838 N.Y.S.2d 631 (2d Dep't 2007) (no punitive

damages where wrong complained of was essentially private, not public); *Fulton v. Allstate Ins.*

*Co.,* 14 A.D.3d 380, 381, 788 N.Y.S.2d 349 (1st Dep't 2005) ("Punitive damages are not

recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs

but to vindicate public rights.")).

Here, Plaintiffs claim that they are entitled to punitive damages because Defendants

allegedly engaged in the complained-of conduct "willfully, fraudulently, maliciously and

oppressively, in direct and intentional breach of their fiduciary, contractual and other obligations

to Plaintiffs."[85]  Plaintiffs do not even allege the type of egregious public harm required for an award of punitive damages.  *Cross*, 2011 WL 2222350 at *2.  As a result, Plaintiffs' claim for punitive damages must be dismissed.

### V.   This Court Does Not Have Personal Jurisdiction Over Jonna Miller.

Under New York jurisprudence, the standard for establishing personal jurisdiction over a non-resident is well-settled:  "Where a party moves to dismiss an action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  *Upstate Networks, Inc. v. Early*, 6:11-CV-01154 LEK, 2012 WL 3643843, at *2 (N.D.N.Y. Aug. 23, 2012).  "[W]here a court relies only upon the pleadings and supporting affidavits, a plaintiff need only make a *prima facie* showing of personal jurisdiction over a defendant."  *Id.* (emphasis in original). [86] "Pleadings that assert only "conclusory non-fact-specific jurisdictional allegations" or state a "legal conclusion couched as a factual allegation" do not meet this burden.  *Id.* (citing *Jazini v. Nissan Motor Co*., 148 F.3d 181, 185 (2d Cir. 1998)).  Finally, while a court is to assume the truth of all well-pleaded factual allegations that support a finding of personal jurisdiction,...it should "not draw 'argumentative inferences' in the plaintiff's favor."  *Id.* (citing *Robinson v. Overseas Military Sales Corp*., 21 F.3d 502, 507 (2d Cir. 1994)).

This Court must engage in a two-part analysis to determine whether it may properly exercise personal jurisdiction over Ms. Miller: first, it must determine whether the laws of New York provide for jurisdiction; second, if they do, this Court must then decide whether an exercise

---

[85]    Complaint ¶98.
[86]    A *prima facie* showing of jurisdiction 'does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.'"  *Id.* (citing *Tamam v. Fransabank Sal*, 677 F.Supp.2d 720, 725 (S.D.N.Y. 2010)).

of jurisdiction comports with federal due process requirements.  *Id.* at *3 (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999)).

### A.  New York's long-arm statute does not provide personal jurisdiction over Defendant Miller.[87]

Plaintiffs allege that Ms. Miller is a resident of Georgia and that "[t]his Court has personal jurisdiction over [Defendant] … Miller … because [she] regularly engage[s] in extensive business transactions and solicitations in New York (including the transactions giving rise to the claims in this action)."[88]  Thus, only subsection 1 of the long-arm statute is relevant to the inquiry of whether this Court has personal jurisdiction over Ms. Miller.  Subsection 1 provides for personal jurisdiction over a party not present in the state where that party "transacts business" within the State of New York, such that the nonresident may be deemed to have "purposely availed [herself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws."  *Upstate Networks*, 2012 WL 3643843 at *4 (noting that a single purposeful transaction is sufficient to confer jurisdiction under this prong so long as the cause of action against the non-resident party arises from that transaction).

Courts must look to the totality of circumstances concerning the party's interactions with, and activities within, the state to determine whether that party has transacted business with the state.  *Id.* at *5; see also *Agency Rent A Car Sys. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996)

The Complaint is devoid of any allegation that Ms. Miller transacted any business in New York.  The Complaint's only factual allegations related to Ms. Miller are that she attended the September 2011 Board Meeting (in Las Vegas), and that at that meeting, when asked by Board

---

[87]     *See* New York's long-arm statute, N.Y. C.P.L.R. section 302.

[88]     Complaint ¶¶ 18, 20.

of Directors whether there were any claims developments not previously reported, she replied that there were none.[89]  Plaintiffs allege that Ms. Miller, among others, intentionally misrepresented material claims development information to the Board of Directors at the September 2011 Board Meeting.[90]

Such conduct as described above – Ms. Miller's attendance at a meeting in Las Vegas of a Nevada corporation's Board of Directors – cannot support the exercise by a New York court of personal jurisdiction over Ms. Miller.  Indeed, New York courts have refused to find personal jurisdiction when there was an even greater connection between the defendant and the forum than that described above.  For instance, in *Barron Partners, LP v. Lab123, Inc.,* No. 07 Civ. 11135(JSR), 2008 WL 2902187 (S.D.N.Y. July 25, 2008), the plaintiff sued several corporate and individual defendants, alleging, in essence, that defendants fraudulently induced plaintiff to invest in a new public entity.  The plaintiff sought to establish the court's personal jurisdiction under section 302(a)(1) over one of the individual defendants by virtue of the fact that the individual defendant had attended a board meeting of the new public entity in New York and sent an email to the plaintiff's managing partner.  *Id.* at *11.

The *Barron* court found these allegations insufficient to show that the individual defendant conducted business in New York, and that plaintiff's cause of action did not arise out of either of these alleged New York activities.  *Id.  See also Upstate Networks*, 2012 WL 3643843 at *4 (finding no personal jurisdiction where defendant traveled to New York between two and three times to attend meetings regarding the project at issue because those meetings did not occur during contract negotiations, but instead transpired as performance of the contract was ongoing); *MEE Direct, LLC v. Tran Source Logistics, Inc.,* No. 12 Civ. 6916(SAS), 2012 WL

---

[89]     Complaint ¶¶ 58, 60, 64.

6700067, at *5 (S.D.N.Y. Dec. 26, 2012) (same where individual defendant attended three meetings in New York and telephoned New York numerous times to set up the meetings because the meetings were not alleged to be necessary or to substantially advance a business relationship); *V Cars, LLC v. Israel Corp.,* 902 F.Supp.2d 349, 361-62 (S.D.N.Y. 2012) (same where "exploratory" meetings were conducted in New York); *Three Five Compounds, Inc. v. Scram Technologies, Inc.*, No. 11 Civ. 1616(RJH), 2011 WL 5838697 at, * 11-12 (S.D.N.Y. Nov. 21, 2011) (same where parties met in New York to discuss already concluded investment agreement); *King County, Wash. v. IKB Deutsche Industriebank, AG*, 769 F. Supp.2d 309, 317-18 (S.D.N.Y. 2011) (same where isolated visits to New York by individual employees did not bear requisite relationship with alleged fraudulent scheme).

Here, Plaintiffs fail to allege that Ms. Miller even set foot in the state of New York.  By attending a meeting in Las Vegas of a Nevada corporation, Ms. Miller cannot be said to have purposely availed herself of the privilege of conducting business in New York, as required by Section 302(a)(1).  *See Upstate Networks,* 2012 WL 3643843 at *4.  Indeed, "where a defendant communicates with a New York plaintiff in connection with a transaction that has little connection to New York other than the communication itself, the defendant has not transacted business in New York." *Three Five Compounds,* 2011 WL 5838697 at *8.

To the extent that Plaintiffs seek to establish this Court's long-arm jurisdiction over Ms. Miller by imputing to her the actions of her employer, Uni-Ter, that argument must also fail. First, Plaintiffs fail to plead this purported basis for jurisdiction.  Additionally, this argument is based on an agency theory that Uni-Ter was acting as Ms. Miller's agent.  *See, e.g., King County*, 769 F.Supp.2d at 320; *Karabu Corp. v. Gitner*, 16 F.Supp.2d 319, 323-324 (S.D.N.Y. 1998)

---

[90]      *Id.* ¶ 72.

(holding that a non-resident corporate officer who has not personally transacted business in New York can still be subject to personal jurisdiction under section 302(a)(1) if it can be shown that the corporation transacted business in New York as the officer's agent).

To establish that a corporation acted as its officer's agent, a plaintiff must "convince the court that [the corporation] engaged in purposeful activities in this State in relation to [plaintiff's] transaction for the benefit of and with the knowledge and consent of the [] defendants and that they exercised some control over [the corporation] in the matter." *Karabu Corp.*, 16 F.Supp.2d at 323 (citation omitted). "At the heart of this inquiry is whether the out-of-state corporate officers were 'primary actor[s] in the transaction in New York' that gave rise to the litigation, and not merely 'some corporate employee[s] … who played no part in' it." *Id.* (citation omitted).

To support their agency theory of personal jurisdiction, Plaintiffs are required to show that Ms. Miller "exercised some control" over the actions allegedly committed in New York by Uni-Ter personnel. *Id.* at 324. "To make a prima facie showing of 'control,' a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a 'primary actor' in the specific matter in question; control cannot be shown based merely upon a defendant's title or position within the corporation." *Id.* (citation omitted); *see also King County*, 769 F.Supp.2d at 320 (holding that plaintiffs' agency theory of personal jurisdiction over individual defendants failed because plaintiffs offered no evidence to indicate that individual defendants exercised control over corporation's activities in New York).[91]

---

[91]     The *King County* court stated:
    "By grouping [their] activities in with the alleged conduct of [the corporation],
    [plaintiffs] provide[ ] no basis for the Court to determine whether [the
    individual defendant] was a primary actor orchestrating the allegedly tortious
    conduct, or [whether the individual defendant was] named in the complaint

Similarly, the Complaint fails to allege that Ms. Miller exercised control over Uni-Ter. Rather, Plaintiffs attempt to subject Ms. Miller to personal jurisdiction by "grouping" her activities with those of Uni-Ter.[92]  Such vague allegations cannot support this Court's exercise of personal jurisdiction over Ms. Miller.

**B. Exercising personal jurisdiction over Defendant Miller would violate federal due process requirements.**

Even if Plaintiffs could satisfy the long-arm statute, which, as set forth above, they cannot, exercising personal jurisdiction over Ms. Miller in this Court is nonetheless improper, as doing so would violate federal due process requirements.  *See King County*, 769 F.Supp.2d at 314 (explaining the federal due process requirements and holding that federal due process considerations required the claims against the individual defendants to be dismissed); *see also Three Five Compounds*, 2011 WL 5838697 at *6.

The minimum contacts required to satisfy due process are not present here.  Ms. Miller is merely alleged to have attended a meeting in Las Vegas of a Nevada corporation's Board.[93] This allegation does not constitute purposeful availment of the privilege of doing business in New York sufficient to rise to the level of the required minimum contact with New York.  It is not plausible that Ms. Miller could have expected that by attending that September 2011 Board Meeting, she would be hailed into a New York court.

Moreover, subjecting Ms. Miller to the jurisdiction of a New York court would violate

---

simply because [their] name[s] appear[ ] at the top of [the corporation's] masthead." Indeed, "[c]ourts in this district have ... routinely granted 12(b)(2) motions for lack of personal jurisdiction where the plaintiff made only broadly worded and vague allegations about a defendant's participation in the specific matter at hand."
769 F.Supp.2d at 321 (citation omitted).

[92]   *See, e.g.*, Complaint ¶¶3, 20.

[93]   Complaint ¶¶24, 58, 60.

the reasonableness requirement of the due process standard as evaluated under the five factors set forth by the *King County* court.  As to the first factor, subjecting Ms. Miller to personal jurisdiction in New York would impose upon her an undue burden in terms of travel, expense, and time.  *See King County*, 769 F.Supp.2d at 321.  As to the second and third factors, New York will preserve its interest in the case, and Plaintiffs will be protected in their efforts to obtain effective and convenient relief, by the continuing adjudication of the underlying action against the remaining defendants.  *Id.*  As to the fourth factor, the resolution of this controversy would be no less efficient if Ms. Miller were not a party to this action.  *Id.*  As to the fifth factor, there is no reason why Plaintiffs could not pursue their claims against Ms. Miller in Georgia.   Taken together, a court's consideration of these factors suggests that the "traditional notions of fair play and substantial justice" are best served by dismissing the claims against Ms. Miller in this forum. *Id.*    For the reasons set forth above, personal jurisdiction over Ms. Miller is improper in New York under both the long-arm statute and federal due process considerations.

## CONCLUSION

For the foregoing reasons, Defendants Uni-Ter Underwriting Management Corp., Uni-Ter Claims Services Corp., U.S. RE Companies, Jonna Miller, and Richard Davies respectfully request that this Court grant their Motion to Dismiss the Complaint, and grant any further relief that this Court deems just and proper.

Dated:  September 30, 2013, New York, New York

CARLTON FIELDS, P.A.
By:/s/ *Brian Rosner*
    Brian Rosner (Bar Roll No.: 518312)
    CARLTON FIELDS, P.A.
    26 Broadway, 22nd Fl.
    New York, NY 10004
    (212) 785-2577 (phone)
    (212) 785-5203 (facsimile)
    Email:  brosner@carltonfields.com