UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
:
ONEIDA SAVINGS BANK; MARQUIS :
COMPANIES I, INC.; PINNACLE HEALTHCARE, :
INC.; ROHM SERVICES CORPORATION; : ECF Case
HEATHWOOD HEALTH CARE CENTER, INC.; :
and EAGLE HEALTHCARE, INC., : No. 5:13-CV-746 (MAD/ATB)
:
                    Plaintiffs, : Oral Argument Requested
:
        -against- :
:
UNI-TER UNDERWRITING MANAGEMENT :
CORPORATION; UNI-TER CLAIMS SERVICES :
CORPORATION; U.S. RE COMPANIES, INC.; :
SANFORD ELSASS; DONNA DALTON; JONNA :
MILLER; and RICHARD DAVIES :
:
                    Defendants. :
:
------------------------------------------------------------ x

**DEFENDANTS SANFORD ELSASS AND DONNA DALTON'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR
MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR
<u>LEAVE TO FILE AN AMENDED COMPLAINT</u>**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000

*Attorneys for Defendants Sanford Elsass
and Donna Dalton*

**TABLE OF CONTENTS**

Page

INTRODUCTION .............................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 3

I.    THE COMPLAINT FAILS TO ALLEGE A MISSTATEMENT...................................... 3

    A.    Plaintiffs Fail to Identify Any Alleged Misstatement with Particularity................ 3

    B.    Plaintiffs Fail To Demonstrate that Any Alleged Misstatements Was False When Made. ........................................................................................................... 4

        1.    Plaintiffs Fail to Allege a Misstatement in the September 2011 Praxis Report or the September 21, 2011 Board Meeting. ........................ 4

        2.    Plaintiffs Fail to Allege Any Misstatement in the November 7, 2011 Board Meeting. ................................................................................... 5

        3.    The Proposed Amendment Does Not Identify Any Misstatements............ 6

II.    PLAINTIFFS COULD NOT HAVE RELIED ON ANY ALLEGED MISSTATEMENTS MADE AFTER NOVEMBER 7, 2011. .......................................... 6

III.    PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER. ............. 7

    A.    Plaintiffs Fail to Identify Concrete Benefits to Mr. Elsass or Ms. Dalton from the Alleged Misstatements. ............................................................................ 7

    B.    Plaintiffs Fail to Plead that Mr. Elsass or Ms. Dalton Knew Contradictory Facts. ..................................................................................................................... 8

    C.    The Proposed Amendments Do Not Support a Strong Inference of Scienter. .................................................................................................................. 9

IV.    PLAINTIFFS FAIL TO PLEAD A BASIS FOR PUNITIVE DAMAGES. ..................... 10

CONCLUSION................................................................................................................................ 10

## TABLE OF AUTHORITIES

**CASES**

*Bd of Trs. of City of Ft. Lauderdale Gen. Empl. Ret. Sys. v. Mechel OAO*,
    811 F. Supp. 2d 853 (S.D.N.Y. 2011)......................................................................9

*Beck v. Mfrs. Hanover Trust Co.*,
    820 F.2d 46 (2d Cir. 1987)....................................................................................8

*Gabriel Cap., L.P. v. NatWest Fin., Inc.*,
    94 F. Supp. 2d 491 (S.D.N.Y. 2000).......................................................................3

*Goldstein v. Solucorp Indus.*,
    No. 11-CV-6227(VB), 2013 WL 1812005 (S.D.N.Y. Mar. 19, 2013).....................3

*In re Advanced Battery Technologies, Inc. Sec. Litig.*,
    No. 11 Civ. 2279(CM), 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012) ..................7

*In re Duane Reade Inc. Sec. Litig.*,
    02 Civ. 6478(NRB), 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003) .....................5

*In re JP Morgan Chase Sec. Litig.*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005).....................................................................8

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006).....................................................................9

*In re Refco, Inc. Sec. Litig.*,
    826 F. Supp. 2d 478 (S.D.N.Y. 2011).....................................................................3

*In re Sierra Wireless, Inc. Sec. Litig.*,
    482 F. Supp. 2d 365 (S.D.N.Y. 2007).....................................................................4

*In re WorldCom, Inc. Sec. Litig.*,
    303 F. Supp. 2d 385 (S.D.N.Y. Jan. 6, 2004) .........................................................5

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)...............................................................................7, 8

*Kuriakose v. Federal Home Loan Mortg. Corp*,
    897 F. Supp. 2d 168 (S.D.N.Y. 2012).....................................................................8

*Landis v. Remington Arms Co., Inc.*,
    No. 8:11-CV-1377, 2012 WL 6098269 (N.D.N.Y. Dec. 7, 2012) ......................2, 6

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986).....................................................................................9

*Lucente v. Int'l Bus. Machs. Corp.*,
    310 F.3d 243 (2d Cir. 2002)..................................................................................2, 10

*M&T Bank Corp. v. Gemstone CDO VII, Ltd.*,
    68 A.D.3d 1747 (4th Dep't 2009)....................................................................................7

*N.Y. Univ. v. Cont. Ins. Co.*,
    87 N.Y.2d 308 (1995) ...................................................................................................10

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)........................................................................................7, 9

*Patriot Exploration, LLC v. SandRidge Energy, Inc.*,
    No. 3:11cv01234(AWT), 2013 WL 3285118 (D. Conn. June 29, 2013) ...................3, 4

*Pollio v. MF Global, Ltd.*,
    608 F. Supp. 2d 564 (S.D.N.Y. 2009)..............................................................................4

*Rocanova v. Equitable Life Assur. Soc'y of U.S.*,
    83 N.Y.2d 603 (1994) ...................................................................................................10

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996)..............................................................................................4

*Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*,
    No. 11 Civ. 4362(PKC), 2012 WL 1890388 (S.D.N.Y May 23, 2012) ........................3

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)............................................................................................8

*Steinhardt Grp. v. Citicorp*,
    272 A.D.2d 255 (1st Dep't 2000) .................................................................................10

*Vento & Co., LLC v. Metromedia Fiber Network*,
    No. 97 Civ. 7751(JGK), 1999 WL 147732 (S.D.N.Y. Mar. 18, 1999) ........................3

*Zucker v. Sasaki*,
    963 F. Supp. 301 (S.D.N.Y. 1997).................................................................................7

**STATUTES**

Fed. R. Civ. P. 12(b)(6)............................................................................................................2

## INTRODUCTION

The allegations in the complaint tell a simple story; one that does not involve any wrongdoing by the defendants. After learning in late-August 2011 that Lewis & Clark LTC Risk Group Inc. ("Lewis & Clark") had suffered unexpected underwriting losses, Sanford Elsass, Donna Dalton, and the other defendants promptly reported these losses to the plaintiffs and engaged an outside consultant, Praxis Claims Consulting ("Praxis"), to do a limited review of Lewis & Clark's claims process. After Praxis completed its limited review, the defendants accurately disclosed the scope and findings of Praxis's review and requested that plaintiffs invest additional funds to shore up Lewis and Clark's position. Ultimately, despite the defendants' best efforts, Lewis & Clark failed and plaintiffs lost their investments. These facts do not support a securities claim.

As Mr. Elsass and Ms. Dalton showed in their opening brief, the complaint fails to identify with particularity any misstatements or demonstrate that any alleged misstatement was false when made. Rather, as alleged in the complaint, the defendants accurately disclosed the Praxis claims review report when it became available. Based on that review, plaintiffs invested additional funds in Lewis & Clark on November 7, 2011. Plaintiffs seek to base their claims on a number of alleged statements the defendants made in September and early November 2011. But plaintiffs have not demonstrated that any of those statements were false when they were made. *See infra* p. 6.

Plaintiffs also point to several statements made *after* they made their investment decisions, but similarly fail to plead that any of those statements were false when made. More fundamentally, plaintiffs could not possibly have relied on *post*-November 7 statements when they made their investment decisions *on* November 7. *See infra* p. 7.

In addition, as Mr. Elsass and Ms. Dalton showed in their opening brief, the complaint fails to allege facts giving rise to a strong inference that any of the defendants acted with fraudulent intent. The complaint seeks to plead a fraudulent motive based on the defendants' desire to continue to run their business and preserve their reputations in the business community. But motivations held by any reasonable business person do not suggest fraud. Plaintiffs also seek to allege scienter based on the defendants' alleged knowledge of facts contradicting their statements. But plaintiffs do not identify any specific contradictory information that the defendants had access to at the time they made their statements. *See infra* pp. 7-9.

Finally, the plaintiffs fail to allege any misconduct directed to the public-at-large that could support a claim for punitive damages. *See infra* p. 11.

Because they could not overcome any of these deficiencies, plaintiffs seek in the alternative to amend their complaint. But the cosmetic changes plaintiffs propose do not correct their failure to plead their claims. Because plaintiffs' complaint and proposed amended complaint do not identify *any* false statement upon which plaintiffs could have relied and fail to plead facts giving rise to a strong inference of scienter, plaintiffs' fraud and negligent misrepresentation claims fail amended or not. As a result, the Court should dismiss the complaint and deny plaintiffs' request to amend as futile. *See Landis v. Remington Arms Co., Inc.*, No. 8:11-CV-1377, 2012 WL 6098269, at *4 (N.D.N.Y. Dec. 7, 2012) ("An amendment is considered futile when 'the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).'" (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).

**ARGUMENT**

**I.   THE COMPLAINT FAILS TO ALLEGE A MISSTATEMENT.**

  **A.   Plaintiffs Fail to Identify Any Alleged Misstatement with Particularity.**

As shown in Mr. Elsass and Ms. Dalton's opening brief, the complaint fails to identify any alleged misstatement with the particularity required under Rule 9(b) and the Reform Act. (*See* Def. Br. at 9-11.)  Plaintiffs respond that "photographic recitation and attribution of the misrepresentation is not required when pleading a violation of Rule 10b-5."  (*See* Pl. Br. at 8.)  While a "photographic recitation" may not be required, plaintiffs fail to allege even the simple "who, what, where, [and] when" of the alleged fraud.  (*See* Def. Br. at 9 (quoting *In re Refco, Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 527 (S.D.N.Y. 2011).)

None of plaintiffs' cases suggest that the vague allegations in their complaint are sufficient under Rule 9(b) and the Reform Act.  To the contrary, each of those cases involved substantially more detailed allegations than those found here.[1]  In particular, plaintiffs fail to allege "circumstances amounting to fraud. . . *as to each individual defendant*."  (*See* Def. Br. at 10 (quoting *Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11 Civ. 4362(PKC), 2012 WL 1890388, at *5 (S.D.N.Y. May 23, 2012)) (emphasis added).)  Instead, in their opposition, plaintiffs suggest that their complaint relies on the "group pleading" doctrine.  (*See* Pl. Br. at 8 (citing *Patriot Exploration*, 2013 WL 3285118, at *24).)  As the court explained in *Patriot Exploration*, however, "group pleading" is "an exception to the requirement that the fraudulent

---

[1] *See, e.g., Gabriel Cap., L.P. v. NatWest Fin., Inc.*, 94 F. Supp. 2d 491, 501 (S.D.N.Y. 2000) (denying motion to dismiss where "[t]he Amended Complaint identifies a number of statements from the Offering Memorandum *and specifically alleges why[they] were false*")(emphasis added); *Vento & Co., LLC v. Metromedia Fiber Network*, No. 97 Civ. 7751(JGK), 1999 WL 147732, at *6 (S.D.N.Y. Mar. 18, 1999) (noting that "the plaintiff has specified the misleading statements … made by the defendants" by quoting specific statements made); *Goldstein v. Solucorp Indus.*, No. 11-CV-6227(VB), 2013 WL 1812005, at *6 (S.D.N.Y. Mar. 19, 2013) (allegations of "detailed statements concerning the existence of specific contracts and agreements"); *Patriot Exploration, LLC v. SandRidge Energy, Inc.*, No. 3:11cv01234(AWT), 2013 WL 3285118, at *24 (D. Conn. June 29, 2013) ("[t]he complaint specifically attribute[d] statements to [the defendants], including . . . a PowerPoint presentation with multiple slides containing alleged material misstatements").

acts of each defendant be identified in the complaint" and "is *limited to instances where there were group-published documents*, such as SEC filings and press releases and where the officers or directors of the company participated in the preparation and dissemination of [those] document[s]." *Patriot Exploration*, 2013 WL 3285118, at *24 (internal quotation marks and citations omitted; emphasis added). Plaintiffs here do not identify any group-published documents. As a result, their repeated allegations about statements made by "Uni-Ter" or "the defendants" should be disregarded. (*See, e.g.,* Compl. ¶¶ 84, 86, 87, 89.)

### B. Plaintiffs Fail To Demonstrate that Any Alleged Misstatements Was False When Made.

Rule 9(b) requires plaintiffs to "state with particularity 'in what respects the statements at issue were false.'" *Pollio v. MF Global, Ltd.*, 608 F. Supp. 2d 564, 570 (S.D.N.Y. 2009) (quoting *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir. 1996)). To do so, plaintiffs must demonstrate the statement was false *at the time that it was made. See In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 378 (S.D.N.Y. 2007). As Mr. Elsass and Ms. Dalton showed in their opening brief, plaintiffs' complaint fails to do so. (*See* Def. Br. at 16-17.) In their opposition, plaintiffs focus on supposed misstatements (1) at the September 21, 2011 Lewis & Clark board meeting during which the defendants presented Praxis's September claims review and (2) at the November 7, 2011 Lewis & Clark board meeting during which plaintiffs committed to their investments. (Pl. Br. at 5, 25-26.) But notably, the complaint fails to demonstrate that any of those supposed misstatements were false when made.

### 1. Plaintiffs Fail to Allege a Misstatement in the September 2011 Praxis Report or the September 21, 2011 Board Meeting.

When Praxis completed its September 2011 claims review, Uni-Ter disclosed that report to plaintiffs prior to the September 21, 2011 board meeting. (Compl. ¶ 61.) Plaintiffs concede

4

that the Praxis report they received accurately disclosed the scope of Praxis's review. (*See* Pl. Br. at 21.) Plaintiffs argue that "[t]he fact that the Praxis report stated it was based on a sample and was not a full claims review does not rise to the level of a cautionary statement." (*Id.*) They miss the point. Plaintiffs claim to have been misled about the limited scope of Praxis's review, but concede that the Praxis report accurately discloses that very fact. "Defendants may not be held liable under the securities laws for accurate reports." *In re Duane Reade Inc. Sec. Litig.*, 02 Civ. 6478(NRB), 2003 WL 22801416, at * 6 (S.D.N.Y. Nov. 25, 2003); *see also In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 390 (S.D.N.Y. Jan. 6, 2004).

Plaintiffs also allege that, at the September 21, 2011 board meeting, Mr. Elsass said "there were no claims developments not previously reported" and Ms. Dalton presented Lewis & Clark's financial statement. (Pl. Br. at 5, 9 (citing Compl. ¶¶ 62-65).) Plaintiffs have not alleged why these statements were false when made. As plaintiffs acknowledge, these statements were consistent with Praxis's September review. (Pl. Br. at 27.) The complaint does not identify information Mr. Elsass or Ms. Dalton had access to *in September 2011*, contradicting either the September Praxis report or their statements at the September 21, 2011 board meeting.

> **2.    Plaintiffs Fail to Allege Any Misstatement in the November 7, 2011 Board Meeting.**

According to the complaint, Mr. Elsass, Ms. Dalton, and the other defendants participated in a telephonic Lewis & Clark board meeting on November 7, 2011. (Compl. ¶ 65.) And, according to the complaint, at this meeting, "Uni-Ter, with U.S. Re's acquiescence, reassured the Plaintiffs that the capital infusion from the November 2011 Debentures would satisfy Lewis & Clark's capital needs and that the claims reserves were adequate." (*Id.*) Again, however, plaintiffs fail to identify any basis to conclude that these statements were knowingly false *at the*

*time they were made*. (*See* Def. Br. at 9 and 15-17.) As a result, these statements cannot support a fraud or misrepresentation claim.

### 3. The Proposed Amendment Does Not Identify Any Misstatements.

The cosmetic-only changes plaintiffs propose for an amended complaint do not correct the fatal failure to allege a misstatement. The proposed amendments:

- Attribute to Mr. Elsass and Ms. Dalton statements that the initial complaint attributes only to "Uni-Ter," but still fails to demonstrate why any of those statements were false when made. (*See, e.g.,* Am. Compl. ¶¶ 55, 57, 58, & 67.)

- Allege that Mr. Elsass and Ms. Dalton represented on September 1, 2011 "that Praxis had been retained to do a complete claims analysis." (Am. Compl. ¶ 75.) As noted above, however, plaintiffs concede that Praxis's report accurately disclosed the scope of the review. *See supra* p. 5.

- Alleges that Ms. Dalton "transmitted the packages [containing the September Praxis report] to each Lewis & Clark Board Member." (Am. Compl. ¶ 63.) While it is unclear what legal significance plaintiffs attribute to this allegation, the proposed amended complaint does not identify any purported misstatement in the September Praxis report. *See supra* p. 5.

Because none of these amended allegations correct plaintiffs' failure to plead a misstatement with particularity, the requested amendment should be denied as futile. *See Landis*, 2012 WL 6098269, at *4 (An amendment is futile "if it would fail to cure prior deficiencies.").

## II. PLAINTIFFS COULD NOT HAVE RELIED ON ANY ALLEGED MISSTATEMENTS MADE AFTER NOVEMBER 7, 2011.

Plaintiffs allege they made their investments on November 7, 2011.[2] (Compl. ¶¶ 66, 76.) As a matter of logic, plaintiffs could not have relied on any alleged misstatements made *after* November 7, 2011 in making their investment decisions. Any alleged misstatements made after

---

[2] Plaintiffs' proposed amended complaint [alleges that certain of plaintiffs' investments occurred after November 7, but concedes that plaintiffs "committed to" make their investments "on or before November 7, 2011." (Am. Compl. ¶ 68.) Indeed, according to plaintiffs' brief, "each [plaintiff] had fully committed to the investments in November 2011, and these Plaintiffs, each board members of a closely-held entity, could not break their commitments." (Pl. Br. at 19.)

6

November 7, 2011 are thus not actionable.[3]  *See Zucker v. Sasaki*, 963 F. Supp. 301, 306 (S.D.N.Y. 1997) ("statements made after the named plaintiff's last stock purchase are not actionable because the plaintiff could not possibly have relied on such statements."); *In re Advanced Battery Technologies, Inc. Sec. Litig.*, No. 11 Civ. 2279(CM), 2012 WL 3758085, at *23 (S.D.N.Y. Aug. 29, 2012) (dismissing securities fraud claims based on alleged misstatements after plaintiffs' stock purchases).  Thus, allegations about purported misstatements after November 7, 2011 do not state a claim.  (*See, e.g.,* Compl. ¶ 73; Am. Compl. ¶ 72.)

### III.  PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER.

As Mr. Elsass and Ms. Dalton demonstrated in their opening brief, the complaint fails to allege a strong inference of fraudulent intent.  (*See* Def. Br. at 13-19.)

#### A.  Plaintiffs Fail to Identify Concrete Benefits to Mr. Elsass or Ms. Dalton from the Alleged Misstatements.

The complaint does not contain "[s]ufficient motive allegations 'entail[ing] concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'"  *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) (quoting *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)).  In their opposition brief, plaintiffs repeat their allegations that the alleged misstatements "protected U.S. Re's reputation in the reinsurance business."[4]  (Pl. Br. at 13 (quoting Compl. ¶ 80).)  Plaintiffs also assert that the defendants "delayed the inevitable dissolution of Lewis & Clark long enough for Uni-Ter to expand its

---

[3] Alleged misstatements made after plaintiffs' investment decisions are likewise insufficient to support plaintiffs' state law claims.  *See M&T Bank Corp. v. Gemstone CDO VII, Ltd.*, 68 A.D.3d 1747, 1750 (4th Dep't 2009) (dismissing fraud claims "based upon alleged oral misrepresentations made . . . after February 21, 2007, the date of plaintiff's purchase of the notes" because "[p]laintiff could not have purchased the notes based on those alleged oral misrepresentations").

[4] Plaintiffs also assert that U.S. Re was motivated to "lower[ ] the exposure of the reinsurance policy U.S. Re had brokered . . . [and] mitigate[ ] any claims of self-dealing BeazelyRe may have against U.S. Re for self-dealing…" Compl. ¶ 80.)  This speculation about U.S. Re's potential motive does not identify any concrete benefit to (and thus is insufficient to plead scienter with respect to) Mr. Elsass or Ms. Dalton.

market share and gain additional insured parties..." (Pl. Br. at 13 (quoting Compl. ¶ 80).) These allegations simply identify motivations "generally possessed by most corporate directors and officers" and are not sufficient to plead scienter. *Kalnit*, 264 F.3d at 139. Indeed, "if commonly shared motives . . . were sufficient, then the scienter requirement would have little meaning." *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 619 n.15 (S.D.N.Y. 2005).

Accordingly, courts consistently reject allegations about corporate executives' desire to maintain their reputations or prolong their business. For example, in *Kuriakose v. Federal Home Loan Mortg. Corp*, 897 F. Supp. 2d 168, 184 (S.D.N.Y. 2012), the court explained that allegations that the defendants "wanted [the company] to remain solvent and preserve their reputations" were insufficient to allege fraudulent intent. Rather, "[t]o allege a motive sufficient to support the inference [of fraudulent intent], a plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994). For the same reason, plaintiffs' allegation here that the defendants sought to "delay[ ] the inevitable dissolution of Lewis & Clark" is insufficient. (Compl. ¶ 88.) Indeed, "[i]t is hard to see what benefits accrue from a short respite from an inevitable day of reckoning." *Shields*, 25 F.3d at 1130.

### B.     Plaintiffs Fail to Plead that Mr. Elsass or Ms. Dalton Knew Contradictory Facts.

Where motive is not apparent, a plaintiff may attempt to plead scienter by alleging circumstantial evidence of conscious misbehavior or recklessness, "though the strength of the circumstantial allegations must be correspondingly greater." *Kalnit*, 264 F.3d at 142 (quoting *Beck v. Mfrs. Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987)). Generally speaking, to plead circumstantial evidence of scienter, a plaintiff must "specifically allege[ ] defendants' knowledge of facts or access to information contradicting their public statements." *Novak*, 216 F.3d at 308.

8

And, to determine whether a plaintiff has done so, "Second Circuit cases uniformly rely on allegations that [1] *specific contradictory information* was available to the defendants [2] *at the same time* they made their misleading statements." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 484 (S.D.N.Y. 2006) (emphasis added). The complaint does not contain "particularized allegations that Defendants had access to specific contradictory information," as required to plead conscious misbehavior or recklessness. *Bd of Trs. of City of Ft. Lauderdale Gen. Empl. Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 873 (S.D.N.Y. 2011).

First, plaintiffs rely on an offering memorandum that Uni-Ter allegedly issued in November 2011, "*after* securing Plaintiffs' investment commitments." (Pl. Br. at 14 (emphasis added).) As Mr. Elsass and Ms. Dalton explained in their opening brief, this offering memorandum cannot support an inference of knowledge against Mr. Elsass or Ms. Dalton because (1) it was issued after any alleged misstatement, (2) there is no allegation tying its contents to Mr. Elsass or Ms. Dalton, and (3) plaintiffs do not identify any statements in this offering memorandum contradicting the defendants' earlier statements. (*See* Def. Br. at 17.)

Second, plaintiffs assert that the preparation of a financial statement "*in late-December* . . . alone is enough to defeat Defendants' claim of innocent intent." (Pl. Br. at 15 (emphasis added).) But, as a matter of law, a late-December financial statement cannot support a strong inference that defendants acted with scienter months before in *September and early November*. *See Luce v. Edelstein*, 802 F.2d 49, 57 (2d Cir. 1986) (plaintiffs "must allege particular facts demonstrating the knowledge of defendants *at the time* that such statements were false") (emphasis added).

### C. The Proposed Amendments Do Not Support a Strong Inference of Scienter.

Plaintiffs' proposed amended complaint does not contain any additional allegations supporting a strong inference of scienter. It simply adds more allegations about Uni-Ter's fees.

9

(*See* Am. Compl. ¶¶ 31, 88.)  Again, however, the desire to earn fees does not support a strong inference of scienter.  *See supra* 7-8.  Because the proposed amended complaint does not support a strong inference of scienter, leave to amend should be denied as futile.  *See Lucente*, 310 F.3d at 258.

## IV. PLAINTIFFS FAIL TO PLEAD A BASIS FOR PUNITIVE DAMAGES.

Plaintiffs' punitive damages claim fails because they do not allege an "egregious tort directed at the public at large."  *Steinhardt Grp. v. Citicorp*, 272 A.D.2d 255, 257 (1st Dep't 2000).  In their opposition, plaintiffs do not identify *any* authority suggesting punitive damages are available for a private securities fraud claim.  (*See* Pl. Br. at 30.)  Indeed, the two cases plaintiffs cite on this point expressly reject punitive damages claims because punitive damages are meant "not to remedy private wrongs but to vindicate public rights."  *Rocanova v. Equitable Life Assur. Soc'y of U.S.*, 83 N.Y.2d 603, 613 (1994); *see also N.Y. Univ. v. Cont. Ins. Co.*, 87 N.Y.2d 308, 321 (1995) (denying punitive damages where case involved "essentially a 'private' contract dispute . . . not conduct which affects the consuming public at large.").

## CONCLUSION

For the reasons set forth above and in their Opening Brief, defendants Sanford Elsass and Donna Dalton respectfully request that the Court dismiss the claims against them with prejudice and deny plaintiffs' motion to amend as futile.

Dated: December 20, 2013         \_\_\_\_s/ Jamie A. Levitt_____
       New York, New York         Jamie A. Levitt

                                  MORRISON & FOERSTER LLP

                                  Jamie A. Levitt
                                  James J. Beha II
                                  1290 Avenue of the Americas
                                  New York, New York 10104
                                  (212) 468-8000

                                  *Attorneys for Defendants Sanford Elsass and Donna Dalton*